RAMJAK v. AUSTRO-AMERICAN S. S. CO., Limited.

(Circuit Court of Appeals, Fifth Circuit. April 12, 1911.)

No. 2,106.

**1.** CARRIERS (§ 280*)—LIABILITY FOR INJURY TO PASSENGERS.

A carrier of passengers for hire is bound to give all reasonable facilities for the reception and comfort of passengers, and to use all precautions as far as care and human foresight can go for their safety, and is answerable for the smallest negligence in himself or his servants.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1085; Dec. Dig. § 280.*]

**2.** SHIPPING (§ 166*)—LIABILITY OF VESSEL FOR INJURY TO PASSENGER—NEGLIGENCE OF SEAMAN.

A seaman on respondent's steamship, being required to go aloft, instead of using the standing ladder in the side rigging, which was reasonably safe, and which he had used on previous occasions, unnecessarily climbed the fore-topmast backstay, a wire rope three-fourths of an inch in diameter, and while at work thereon slipped and fell to the deck, killing himself and falling upon and seriously injuring libelant who was a passenger. *Held*, that the injury was the result of the seaman's negligence, and that respondent was liable therefor.

[Ed. Note.—For other cases, see Shipping, Dec. Dig. § 166.*]

**3.** DAMAGES (§ 132*)—PERSONAL INJURY.

A laboring man, 24 years old, awarded damages in the sum of $5,100 for an injury which caused him pain and suffering for several weeks and resulted in shortening one of his legs and otherwise impairing his earning capacity.

[Ed. Note.—For other cases, see Damages, Dec. Dig. § 132.*]

Appeal from the District Court of the United States for the Eastern District of Louisiana.

Suit in admiralty by Peter Ramjak against the Austro-American Steamship Company, Limited. Decree for respondent, and libelant appeals. Reversed.

The libelant came to this country as an immigrant passenger on the steamship "Eugenia," belonging to the Austro-American Steamship Company, Limited, arriving here on December 16, 1907. Four days before the ship's arrival, the libelant's leg was badly broken in at least two places above the knee by the fall upon him of a sailor from a fore-topmast backstay; the sailor himself being killed in the fall. This sailor, having occasion to go to the extreme top of the foremast to reeve a halyard through a small block near the top, 79 feet high from the deck, in a spirit of ostentation and bravado, took off his shoes, put the end of the halyard in his mouth, climbed with hands, feet, and knees the fore-topmast backstay, a wire rope three-quarters of an inch in diameter which ran from the top of the bulwark about five feet high on the starboard side of the ship to the top of the mast, slanting towards the stern at an angle with the foremast from 20 to 25 degrees. When he reached within a few feet of the top and stretched out his hand to put the rope through the block, he slipped and slid part way down the backstay, and then fell to the deck, killing himself and falling upon Ramjak, who was then coming out of the water-closet.

The weather was calm and sea smooth. The usual way for a sailor to climb to the top of the fore-topmast was to climb the standing ladders in the side rigging to the cross-trees and then go up in the boatswain's chair. This same sailor had used that method several times before on the voyage.

---

Ramjak was treated for his injuries aboard the ship as well as the ship's outfit permitted with somewhat insufficient appliances. On reaching the city of New Orleans, he was refused admission to the country by the immigration authorities, and thereupon was carried by the steamship company to Touro Infirmary, where he was treated with best of surgical skill at the expense of the company. He was discharged from the infirmary about March 5th, and again taken before the immigration authorities, and was again refused admission. Being necessarily in the custody of the steamship company, who was ordered to deport him, he was thereupon transferred to the parish prison of the city of New Orleans, where he was confined at the expense of the company but without further medical treatment until April 6, 1908, when he was again taken before the immigration authorities, examined, and admitted.

On October 10, 1908, Ramjak filed a libel in personam against the steamship company, setting forth the negligence of the company in the treatment he had received, and claimed: First, damages for the breaking of his leg; and, second, damages for false imprisonment.

The respondent excepted to all that portion of the libel which claimed damages for false imprisonment, which exception the court sustained. The libelant amended his libel limiting his damages to the breaking of his leg.

On the hearing on the amended libel the trial court, for reasons orally assigned, dismissed the libel, with costs.

Louis P. Bryant, for appellant.

Edgar H. Farrar, for appellee.

Before PARDEE and McCORMICK, Circuit Judges.

PARDEE, Circuit Judge (after stating the facts as above). The trial judge apparently took the view that under the evidence Ramjak's injuries were the result of an accident for which neither the carrier nor his servants were responsible; but we do not so read the evidence. Ramjak was a passenger for hire, and no fault can be imputed to him. The unfortunate sailor involved was presumably in the performance of a duty, and he was or should have been under the eye of the officer of the deck, and when to show his dexterity and skill he undertook the dangerous, and in the absence of an emergency "foolhardy," feat of climbing the fore-topmast backstay, thereby unnecessarily endangering his own life and possibly the lives and limbs of those persons rightfully on and about the deck, he was guilty of negligence, and, as his bravado resulted in injury to Ramjak, the carrier is unquestionably answerable. There is no question of selection between two safe ways. The usual way by the ladder in the side rigging was ordinarily safe; the way by climbing the backstay was res ipsa loquitur not only dangerous for the climber but unsafe with reference to the ship's company and passengers.

[1] The carrier of passengers for hire is bound to give all reasonable facilities for the reception and comfort of passengers and to use all precautions as far as care and human foresight can go for their safety on the road. He is answerable for the smallest negligence in himself or his servants. See Kent's Comm. vol. 2, p. 601; Shearman & Redfield on Neg. (2d Ed.) § 266. And this is the rule in admiralty. See The New World v. King, 16 How. 469, 14 L. Ed. 1019; The Oriflamme, Fed. Cas. No. 10,572; The Anchoria, 83 Fed. 847, 27 C. C. A. 650.

[2] From this view of the law and the facts it follows that the appellant, libelant below, is entitled to recover compensation for his injuries and resulting damages.

[3] Under the evidence given by himself, appellant should be classed as a laborer dependent for his living upon his physical capacity to perform manual labor; and with his apparent determination, energy, and industry he could well look forward to earning in this country from $2.50 to $3 a day for 300 days in the year. Crippled, with one leg an inch and a half shorter than the other and some resulting infirmities (all of which is the direct result of his injuries), his earning capacity has been decidedly impaired, in our judgment to the extent of $1 per day, and the compensation in this respect can be assimilated to an income of $300 per year. During his expectancy of life, which, at 24, is 38.59 years, the present value of such an income at 6 per cent., the usual business rate is this country, would be about $4,500 in round numbers.

He undoubtedly suffered pain and anguish during his cure and convalescence, and in that I think we can safely follow the late Mr. Justice Bradley, who allowed in a very similar case in the matter of injuries the sum of $500. See Miller v. W. G. Hewes, 1 Woods, 363, Fed. Cas. No. 9,594. Also see William Branfoot (D. C.) 48 Fed. 914.

According to the same cases, appellant is also entitled to compensation for the loss of his labor from the time he arrived in the port until he was discharged from the custody of the steamship company and admitted into the country, for which allowance should be made at $1 per day, based on the fact that as he was a foreigner just come into the country, and, not versed in our language, he would have had some difficulty in getting employment, and his board was paid, and which period was from the 16th day of December, 1907, to April 4, 1908, in which there was about 100 working days. As appellant was necessarily in the custody of the steamship company during this period, confinement in the infirmary and parish prison may be considered as damnum absque injuria. Appellant makes no proof of medical and surgical expenses and attendance.

The decree of the District Court is reversed, and the cause is remanded, with instructions to enter a decree in favor of libelant and against the respondent for $5,100 damages and all costs.