**SABINE TOWING CO., Inc., et al. v. BRENNAN et al.\***

**VAN BEECK v. SABINE TOWING CO., Inc., et al.**

Nos. 7876, 7977.

Circuit Court of Appeals, Fifth Circuit.

Aug. 14, 1936.

---

\*Writ of certiorari denied 57 S. Ct. 191, 81 L. Ed. —.

M. A. Grace and Edwin H. Grace, both of New Orleans, La., for Sabine Towing Co., Inc., and others.

M. G. Adams, of Beaumont, Tex., H. C. Hughes and J. W. Lockhart, both of Galveston, Tex., and W. M. Crook, of Beaumont, Tex., for Sophia Brennan and others.

M. G. Adams, of Beaumont, Tex., and H. C. Hughes, of Galveston, Tex., for Charles Van Beeck.

Before FOSTER, SIBLEY, and WALKER, Circuit Judges.

FOSTER, Circuit Judge.

These cases present an appeal and cross-appeal in admiralty from a judgment awarding damages for the death of certain members of the crew of the tugboat Edward F. Coney, owned by appellant, Sabine Towing Co., Inc., hereafter called the company, which vessel foundered in the Gulf of Mexico on January 28, 1930, with the loss of her entire crew of 14. The company filed a petition for limitation of liability which was denied, on the ground that the vessel was lost because unseaworthy, to the knowledge of her owners. (C.C.A.) 72 F.(2d) 490. Claims were filed in that proceeding by personal representatives of 8 members of the crew, hereafter called claimants, and were referred to a Commissioner to take the evidence. and recommend the amounts to be recovered. In due course the Commissioner reported. Exceptions to the report were filed by the

company, on the ground that the awards were too high. The claimants also excepted to the report on the ground that the awards were too low. All exceptions to the Commissioner's report were overruled and the amounts he recommended were adopted by the court, except as to one claim which was disallowed. Judgment was entered accordingly.

So far as he discussed it, the Commissioner correctly interpreted the law. He reviewed the evidence to some extent in making his report but did not specifically find the facts as to any claim. It is not clearly shown what formula he used in determining the amounts to be awarded.

■ The law is well settled. The claimants are entitled to recover in admiralty, under the provisions of section 33 of the Merchant Marine Act of June 5, 1920 (46 U.S.C.A. § 688), which incorporates the provisions of the Federal Employers' Liability Act (45 U.S.C.A. § 51 et seq.) by reference. Lindgren v. U. S., 281 U.S. 38, 50 S.Ct. 207, 74 L.Ed. 686. There may be only one recovery by the personal representative of the deceased for the benefit of all the persons entitled to damages under the act. The measure of damages is compensation for the deprivation of the reasonable expectation of pecuniary benefits that would have resulted from the continued life of the deceased. In estimating this the earning power of money must be considered and an amount determined, which, capitalized at a reasonable rate of interest, would yield annually the same income the person injured might have expected from the deceased, using the interest and part of the capital from year to year. To determine this amount standard tables prepared by actuaries may be used. Chesapeake & Ohio Ry. Co. v. Kelly, 241 U.S. 485, 36 S.Ct. 630, 60 L.Ed. 1117, L.R.A.1917F, 367.

■ Pecuniary loss to be recovered may include damages, "when the beneficiary is a child, for the loss of that care, counsel, training, and education which it might, under the evidence, have reasonably received from the parent, and which can only be supplied by the service of another for compensation." Michigan Central R. Co. v. Vreeland, 227 U.S. 59–71, 33 S.Ct. 192, 196, 57 L.Ed. 417.

■ There are certain features common to all the claims. Claimants offered an insurance actuary as a witness. He testified as to the joint expectation of life of the deceased and beneficiary. Since there is no evidence in the record to the contrary, we must accept that testimony as part of a reasonable basis' for the determination of the amount to be awarded in each case. The actuary also testified as to the present value of money capitalized at 3½ and 4 per cent. per annum interest. On this testimony claimants contend that they should have been awarded damages on the present value of the amount of annual income lost for the joint expectancy of life, capitalized at 3½ per cent.

Six claims were presented for the benefit of the widows of the deceased seamen. Every widow testified, in substance, that her husband was strong and healthy, sober and industrious and devoted to his wife and family; that he turned over his entire wages to her every month and used not over $10 to $15 per month for his personal expenses. However, it also appears that the wives paid all the bills for the support of the family and, in some instances, installments on articles bought on time. Three of these claims were also for the benefit of minor children. There is nothing in the evidence, except the general statement of the widow that the father was devoted to his children and gave them his care and affection when at home, to show the pecuniary value of his services to the children or that another would of necessity have to be employed to furnish the same care.

We must endeavor to do justice between the parties, the company as well as the claimants. There is no mathematical formula for exactly determining the loss. Any amount fixed is of necessity hypothetical. We may not consider what might happen in the future. The earnings of the deceased might have increased or diminished had they lived. Some beneficiaries might squander their recovery in a year or two. Others might preserve it intact for many years, using only the annual interest, or by successful business ventures double it. All this is too speculative to have a place in determining the award.

■■ The legal rate of interest in Texas is 10 per cent. per annum. Doubtless many well-secured loans are made at that rate. United States bonds as a rule do not pay more than 3 per cent., but there are many state bonds and sound industrial securities that pay at least 6 per cent. per annum interest. Courts are not bound to adopt either the highest or the lowest rate of

interest in determining the amount to be awarded. In Ramjak v. Austro-American S. S. Co., 186 F. 417, we adopted the rate of 6 per cent. per annum as reasonable in determining the decreased earning capacity of a passenger injured on a vessel. In U. S. v. Boykin, 49 F.(2d) 762, we again adopted the rate of 6 per cent. per annum in awarding damages to a father for the death of his son. We consider that rate just and reasonable.

 Assuming the testimony of the widows to be truthful, it is beyond dispute that the husbands, upright, faithful, and devoted, derived as much benefit from the upkeep and happiness of the family as did the wives. We consider it to be a fair estimate to say the family had lost an amount equivalent to one-half of what the husband and father earned.

We may take up the various awards in the order in which they appear in the judgment, allowing recoveries in round figures to conform as near as they may to a fair estimate of the damages suffered.

 William Brennan was master of the tug. His wages were $200 per month at the time of his death. His average earnings for thirteen months had been $161.58 per month. A claim was filed for the benefit of his widow, Sophie Brennan, and three minor children, Audrey, aged 8, William aged 6 and Gloria, aged 3. Judgment was rendered for $21,000 in proportions of $15,000 to the widow, $1,500 to Audrey, $2,000 to William and $2,500 to Gloria. Fixing the loss to the widow and children at $1,200 per annum, an amount of $15,250, capitalized at 6 per cent. for the life expectancy, which was 24 years, would fully cover the loss. The statute does not require that the court should apportion the recovery among the beneficiaries, Central Vermont Railway Co. v. White, 238 U.S. 507, 35 S.Ct. 865, 59 L.Ed. 1433, Ann.Cas.1916B, 252, but it is usually done. Where there are a number of beneficiaries in the class entitled to recover, and the evidence discloses that their expectancies are different, it is proper to do so. In the case of a recovery for the benefit of a widow and her minor children, there is hardly any need to apportion the amount between them. Naturally, the minor children will receive full benefit from any award made to the mother. However, the District Court has seen fit to do so in this case. Appellant has no interest as to this and appellee has made no objection. We do not consider that any distinction should be made between the children because of the difference in their ages. The amount apportioned to them will probably be administered by the mother, as guardian or trustee. The only practical result of the apportionment would be to have the amount set aside to them, to be available when they reach majority. We consider that the apportionment of $1,000 to each of the children would be proper. This will be sufficient to include any theoretical pecuniary recovery for the loss of the father's care and guidance.

 Orville Glenn Pyle was chief engineer of the tug. His wages were $190 per month at the time of his death. For 13 months his earnings had averaged $182.31 per month. A claim was filed for the benefit of his widow, Bertha M. Pyle. There were no children, issue of the marriage. Judgment was rendered for $20,000. The life expectancy was 25 years. Whether there be one or many of the class entitled to recover is not material. Fixing her loss at $1,140 annually, she is entitled to an award of $14,750.

 Cyrus Durio was steward and cook on the tug. His wages were $85 per month. His average for 13 months was $86.95. A claim was filed for the benefit of his widow, Mrs. Adolphine Durio, and three minor children, Mildred, aged 16, Earline, aged 13, and Joseph, aged 9. Judgment was rendered for $9,000 in proportions of $7,300 to the widow, $400 to Mildred, $500 to Earline and $800 to Joseph. The life expectancy was 15 years. Fixing the loss at $510 annually, $5,250 would be an ample recovery on this claim. Considering the advanced ages of the children, it should be apportioned $3,750 to the widow and $500 to each of the children.

 Stewart J. Causey was classed as a sailor on the tug. His wages were $65 per month at the time of his death. For 12 months his earnings had averaged $57.68 per month. He left as beneficiaries his father and mother. A claim was filed for their benefit and judgment was rendered for $3,000, proportioned $1,500 to each. The father testified that his son was 19½ years of age at the time of his death. The parents lived in Amite county, Miss., and owned a farm of 172 acres, of which they cultivated 14 acres and rented 14 acres. The son had been living at Port Arthur, Tex., with his sister and her husband and had gone to school there. It is not shown how long he had been away from home, but

it is reasonably certain that he had been away for several years. His father testified that his son regularly sent him $20 a month, and sometimes would make it $25 but there is nothing to show this but his own testimony. He introduced two letters from his son. In one, dated October 29, 1929, about three months before his death, he apologized for not writing, told about a trip he had taken to New Orleans, Jacksonville, and Miami, complained about the cost of living and said he could not save anything but was going to send his father and mother $20 and would send them another $25 for Christmas, and that was the best he could do. In the other letter, dated January 25, 1930, a few days before his death, he again apologized for not having written before, said he was going to make a trip to Pensacola and Tampa and would not be back for some time, but he would write them. He made no mention in this letter of having complied with his previous promise or about making any further contributions. The testimony of the father that his son sent him from $20 to $25 a month has little probative weight. Living away from home, paying all his own expenses and earning only $65 a month, it was highly improbable that he could have managed to send his father and mother as much as $20 a month. It is apparent that the father and mother had very little expectation of pecuniary benefit from their son. They were not entitled to recover for his services during minority. New York Central & Hudson River R. Co. v. Tonsellito, 244 U.S. 360, 37 S.Ct. 620, 61 L.Ed. 1194. To fix their estimated loss at $100 a year would be extremely liberal. The joint expectancy of life was 15 years. An award of $1,000, to be divided equally between them, would be ample on this claim.

Joseph Hayden Kenney was mate of the tug. His wages were $165 per month at the time of his death and he averaged $168.27 over a period of 13 months. A claim was filed for the benefit of his widow, Ora Kenney and two minor children, Joseph, aged 10, and Kathleen, aged 6. Judgment was rendered for $20,000, proportioned $15,300 to herself, $2,000 to Joseph and $2,700 to Kathleen. The life expectancy was 22 years. Fixing the annual loss at $990, an award of $12,250, proportioned $10,250 to the mother and $1,000 to each of the children would be ample.

C. L. Nelson was on the tug when she was lost and should be rated as a fireman. There is some question as to whether his name was Charles or Cyrus, but that is immaterial, as the recovery is by his personal representative. W. M. Crook presented a claim as administrator and was awarded $7,500 for the benefit of Ruth Nelson, now Ruth Nelson Dumas, his widow, who remarried about a year and a half after his death and was subsequently divorced. There is testimony, slight it is true, but admitted without objection and uncontradicted, that he was signed on by the captain of the tug shortly before she departed on her last voyage and he was working his way to Tampa. The tug's papers were all lost with her. The only item shown on the books of the company is that he earned $12.50 in January, which was due him at the time of his death. The usual rate of pay for firemen on tugs is $65 per month. There were no children, issue of the marriage. The widow testified by deposition that her husband sent her $50 a month regularly. She had been living at Salem, Mass., since 1926, some four years before the husband lost his life. They were not divorced, but he was working in Florida and visited her only occasionally when he could get on a ship that would take him to that part of the country. The widow was earning from $12 to $15 per week, practically as much as the husband when he was steadily employed. Claimant introduced several letters the widow had received from her husband. None of the letters mentioned the sending of money, but one of them promised that he would do so. From the tone of the letters, it may be inferred that he intended to send her whatever he could spare when he was earning anything. The burden was on claimant to prove the decedent's employment on the vessel, the rate of wages he received, and the beneficiary's reasonable expectancy of future income. There is nothing to show that Nelson had any income other than his pay. The testimony of the widow that her husband regularly sent her $50 a month is entitled to no weight as that would leave him only $15 per month, if he were employed, to cover his entire expenses, and he must have known she was supporting herself. It is doubtful that claimant has sustained the burden of proving any loss. However, as the Commissioner and the District Court were convinced, we will not take a contrary position. Considering all the testimony, it cannot be said that the beneficiary lost an expectancy of income of more than $20 a month. The life expectan-

cy was 22 years. An award of $3,000 would be ample on this claim.

■■ H. A. Anderson was a fireman on the tug. His pay was $65 a month at the time of his death. He had averaged that for a period of 5 months. A claim was filed for the benefit of his widow, Ruth Anderson. There were no children, issue of the marriage. Judgment was rendered for $11,000 for her sole use. The widow frankly testified that she did not know how much her husband used for his own expenses or how much he earned; that he regularly gave her $37.50 every two weeks while they were married, which was a period of one year and 28 days. It is not shown that he had any source of income other than his pay. It was manifestly impossible for him to have given his wife $75 a month, to say nothing of paying his own personal expenses. The life expectancy was 20 years. Fixing the annual loss of income at $390, an award of $4,750 would be ample.

The cross-appeal is taken to the rejection of a claim filed by Mrs. Jennie Royakers as administratrix to recover damages for the death of her son, Edward C. Van Beeck, who was second mate on the Coney. It appears from a stipulation in the record that Edward C. Van Beeck left surviving him his mother and a brother aged 34. After filing the claim, his mother died in July, 1931, before an award had been recommended by the commissioner. The brother, Charles Van Beeck, qualified as administrator of the estate of his brother and was substituted in place of his mother, the former administrator. Cross-appellant contends that judgment should have been granted for the amount recommended by the commissioner, $700.

■■ The statute (section 1, 45 U.S.C.A. § 51) creates three classes of beneficiaries: (1) The surviving widow or husband and children of the employee; (2) the employee's parents; and (3) the dependent next of kin of the employee. Each class excludes those following, in the order named, and nondependent collaterals are not entitled to recover. Before the passage of the Merchant Marine Act there could be no recovery for damages for the death of a sailor occurring on the high seas. Nor could there be any recovery for death at common law. In Martin's Administrator v. Baltimore & Ohio R. Co., 151 U.S. 673–703,

14 S.Ct. 533, 38 L.Ed. 311, an action was brought by Martin to recover damages for personal injuries to himself. A verdict was directed for defendant. Pending an appeal, Martin died and his administrator was substituted. On suggestion of his death, in the Supreme Court, it was held that the action abated by the death of the injured party, under the law of Virginia, where the action was brought, and that the administrator had no right to maintain the action. In Chicago, Burlington & Quincy R. Co. v. Wells-Dickey Trust Co., 275 U.S. 161, 48 S.Ct. 73, 72 L.Ed. 216, 59 A.L.R. 758, it was held that the liability is to one of the three classes named in the act and not to the several classes collectively; and if the person entitled to recover at the time of the employee's death dies before a recovery of the compensation, the cause of action dies also.

■■ There is no doubt that the cause of action abated with the death of the mother, who at the time of her son's death was the sole beneficiary entitled to recover, to the exclusion of all others. It is clear there could be no recovery on this claim.

■■ The judgment awarded interest to the claimant at the rate of 6 per cent. per annum from February 28, 1935, the date of the filing of the Commissioner's report. The report merely recommended the amounts to be awarded and did not fix the liability of the company. The act does not provide for interest before the damages are determined. Cortes v. Baltimore Insular Line, (C.C.A.) 66 F.(2d) 526. In admiralty the allowance of interest is discretionary with the court. In this case interest should be allowed at the rate of 6 per cent. per annum from July 18, 1935, the date the decree was entered in the District Court.

On the appeal the judgment is amended to conform to our views above expressed. As so amended, it is affirmed. Costs in the District Court to follow the judgment. Costs of appeal to be divided; one-half to appellants and one-half to appellees, in proportion to the various amounts of their recoveries.

On the cross-appeal the judgment is affirmed.

WALKER, Circuit Judge, concurred in the disposition of this case, but died before the opinion was handed down.