Mrs. Valerie Jean GARDNER, as Administratrix of the Estate of Robert Edward Gardner, Jr., Deceased, Libelant,

v.

NATIONAL BULK CARRIERS, INC., in personam, and the S.S. BULKCRUDE, in rem, Respondents.

No. 8022.

United States District Court
E. D. Virginia,
Norfolk Division.

Aug. 30, 1963.

As Amended Sept. 11, 1963.

Sidney H. Kelsey, Norfolk, Va., for libelant.

Roy L. Sykes (Jett, Sykes & Berkley), Norfolk, Va., for respondents.

WALTER E. HOFFMAN, Chief Judge.

Remanded to this court for a determination of damages occasioned by the death of Robert Edward Gardner, Jr. when he fell or threw himself off the SS BULKCRUDE on the night of December 8, 1958, while the vessel was proceeding south off the Florida Keys, several interesting contentions are advanced by the respective parties.

The deceased seaman was survived by his widow, Valerie Jean Gardner, age 34 at the time of his death.[1] The decedent was 33 years of age.[2] Robert Edward Gardner, III was 4 years old when his father died.[3] Lou Ann Gardner was born on October 16, 1958, and was, therefore, less than two months old when her father was reported missing off the vessel.

Gardner joined the BULKCRUDE on May 21, 1958, and until he died on or about December 8, 1958, he earned $4275.75 while a member of the crew of that vessel. From January 1, 1958, through April 20, 1958, Gardner worked ashore for Commercial Testing and Engineering Company with gross earnings of $932.85. Thus, his gross earnings for 11 months and 8 days of 1958 aggregated $5208.60.

Gardner provided generously for his wife and children during 1958. Until he joined the vessel on May 21, 1958, he lived at home. His gross earnings for three months and 20 days averaged approximately $250.00 per month. His gross earnings while aboard the vessel averaged approximately $650.00 per month. While employed on the BULK-CRUDE, Gardner forwarded to his wife by allotment checks and money orders the total sum of $2740.41. Mrs. Gardner testified that she also received cash aggregating $345.00, making a total contribution in the sum of $3085.41 during a period of about 6½ months, or approximately $475.00 per month.

The deceased was an A/B seaman with some reasonable prospects for advancement. Of course, it is a recognized fact that seamen are rarely, if ever, employed on a 12 month basis. The very nature of the shipping industry is such that the vessels are required to lay up for repairs, etc., and in addition, seamen are frequently discharged following a voyage. True, as to a tanker such as the BULKCRUDE, the employment is more dependable than on other types of vessels carrying a different cargo.

There is evidence to the effect that Gardner had an annual income of approximately $6,000.00 for several years prior to his death, except during 1957 when he was employed ashore from July

---

1. Valerie Jean Gardner was born December 29, 1924. She was 21 days short of being 34 when her husband died.

2. Gardner was born on December 16, 1925. He was 8 days short of 33 when he died.

3. The boy was born on October 26, 1954.

through December 31, 1957, during which period he received the total sum of $2256.25. The foregoing is compatible with his average monthly income while aboard the BULCRUDE, taking into consideration the intermediate months he was not employed on the vessel. With some prospects of advancement, but giving due allowance to the uncertainties facing every seaman, the court finds that the decedent, had he lived, would have received an average of $6,500.00 per annum gross earnings for his working life expectancy.

■ What percentage of the gross earnings would constitute a pecuniary loss to the widow and two children? In this connection the respondents urge that the social security payments now being received by Mrs. Gardner for the benefit of herself and two minor children should be considered by the court in determining the "pecuniary loss" occasioned by Gardner's death.[4] Conceding that the shipowner made a substantial contribution to the general fund provided by the Social Security Act, we think it clear that the payments now being made under the Act cannot be considered in ascertaining the "pecuniary loss" to the widow and children. United States v. Harue Hayashi, 9 Cir., 282 F.2d 599, 84 A.L.R.2d 754; United States v. Price, 4 Cir., 288 F.2d 448; Gypsum Carriers, Inc. v. Handelsman, 9 Cir., 307 F.2d 525; A. H. Bull S. S. Co. v. Ligon, 5 Cir., 285 F.2d 936, 88 A.L.R.2d 479. We see a marked distinction between the situation here presented and the admissibility in evidence of an injured employee's pension rights in determining his probable loss of future earnings. Cf. Murray v. New York, New Haven & Hartford Railroad Co., 2 Cir., 255 F.2d 42. As a practical matter the overall tax picture plays no part in this case. We cannot accept O'Connor v. United States, 2 Cir., 269 F.2d 578, 584, as authority for the proposition that, under the Jones Act, the tax problem should be applied to mitigate damages, as O'Connor was decided under Oklahoma law which holds that damages are based upon "take-home pay." The Second Circuit distinguishes O'Connor in McWeeney v. New York, New Haven & Hartford R. R. Co., 2 Cir., 282 F.2d 34, cert. den. 364 U.S 870, 81 S.Ct. 115, 5 L.Ed.2d 93.

■ We agree with respondents' argument that some portion of the annual contribution made by Gardner should be allocated to his personal expenditures which would not now be incurred since he is dead. O'Connor v. United States, supra. We are asked to attribute one-fourth of the annual contribution to his personal living expenses. For a seaman who spends the greater portion of a year away from his family, we think that this is too great a percentage even though there were four persons in the family before his death. A more appropriate percentage would be approximately one-sixth of the annual contribution.

■ The percentage of Gardner's contributions for his wife and children while aboard the BULKCRUDE furnishes a guide for us to arrive at a determination of pecuniary loss. Since Gardner forwarded, or caused to be sent, the sum of $3085.41 from his gross earnings of $4275.75, we note that he contributed 72% of his gross earnings for the benefit of his wife, two children, and personal living expenses. While living at home his gross earnings during 1958 were considerably less; the amount allocable to his personal living expenses would undoubtedly be proportionately higher; but it is also likely that even a higher percentage of his gross earnings was devoted to the use of the wife and children. Accepting his gross annual earnings at $6500.00, the court finds that 70% of this amount, or $4550.00 per year, constitutes the amount that Gardner would

---

4. The widow receives $254.00 per month, or $3048.00 per annum, until the oldest child reaches the age of 18, at which time the monthly payments drop to $190.-00 until the youngest child reaches 18. Thereafter, the social security payments stop until Mrs. Gardner attains the age of 62 when she will then receive $104.-00 per month.

contribute to his family and for his "at home" personal expenses. Deducting approximately one-sixth of this annual contribution for Gardner's personal living expenses, we find the pecuniary loss of the beneficiaries from decedent's earnings to be $3800.00 per annum.

Having arrived at the conclusion that the aggregate loss to the three beneficiaries is $3800.00 per annum, we must determine what portion of said sum is allocable to the widow, son and daughter respectively. Cognizant of the fact that the widow will be required to maintain the major portion of the expenses, we think it appropriate to allocate to each child 10% of the aforesaid annual sum of $3800.00. Thus, the widow would suffer a pecuniary loss of $3040.00 per annum for the working life expectancy of the deceased, i. e., for a period of 32 years, it being assumed that his working expectancy would terminate at age 65. The son, age 4 at the time of his father's death, has no right to recover for any pecuniary loss beyond the time he attains the age of 21. The daughter, only a few weeks old at the time of her father's death, has a right to claim a pecuniary loss for 21 years.

The beneficiaries will receive their pecuniary loss in advance of what they would have received if Gardner had lived. Thus, while the widow could have reasonably expected $3040.00 per annum for a period of 32 years—a total figure of $97,280.00 if paid over the entire period —the discounted value computed at 3½% (19.069) amounts to $57,969.76. The discounted value of the pecuniary loss to the son for a period of 17 years is $4807.38. The discounted value of the pecuniary loss to the daughter for a period of 21 years is $5585.24.

■ In addition to the pecuniary loss, libelant seeks a recovery for (1) conscious pain and suffering prior to death, (2) loss to the children of the father's nurture, guidance and training, and (3) pre-judgment interest from the date of death. As to any recovery for conscious pain and suffering prior to death, we adhere to the principles previously stated

by this court in Whitaker v. Blidberg-Rothchild Co., D.C., 195 F.Supp. 420, affirmed without discussing point, 4 Cir., 296 F.2d 554. For all we know, Gardner may have been dead when he hit the water. Assuming that he was alive, we do not know how and when he died. He was last seen a few minutes following the evening meal and was not thereafter discovered as missing until nearly midnight. Libelant argues that Gardner met his death either by drowning, being cut by the ship's propellers, or by a shark or other man-killing fish. Even if we accept this argument, it would still constitute rank speculation to base an award for conscious pain and suffering. As was said in Davis v. Parkhill-Goodloe Co., 5 Cir., 302 F.2d 489, 495:

> "But there are so many unknowns in this unexplained slipping or falling of Davis into the water, that we should only say that substantial evidence will be required to sustain a finding of consciousness upon which to rest the permissible assumption of pain."

This claim is disallowed.

■■ While it is true that the loss to the children of the father's nurture, guidance and training is likewise somewhat speculative, we think that it is recoverable under the term "pecuniary loss" as stated in Michigan C. R. Co. v. Vreeland, 227 U.S. 59, 71, 33 S.Ct. 192, 196, 57 L.Ed. 417, where it is said:

> "Nevertheless, the word [pecuniary] as judicially adopted is not so narrow as to exclude damages for the loss of services of the husband, wife, or child, and, when the beneficiary is a child, for the loss of that care, counsel, training and education which it might, under the evidence, have reasonably received from the parent, and which can only be supplied by the service of another for compensation."

The evidence with respect to the value of the father's nurture, guidance and training, with particular reference to what can only be supplied by the serv-

ice of another for compensation, is admittedly vague. But the very age of the children compels a commen sense approach to the problem. While the continued absence from home in his duties as a seaman tends to reduce the value of the father's nurture, guidance and training, we think that each child should receive $200.00 per year during the minority of said child, i. e., discounted in the same manner as the pecuniary loss from decedent's earnings.

The discounted value of $200.00 per annum for a period of 17 years, computed at 3½%, is $2530.20, which amount is allowed to the son as a loss of the father's nurture, guidance and training. For a period of 21 years, computed on the same basis, the like loss to the daughter is $2939.60.

■ As to libelant's right to recover pre-judgment interest, we conclude that this is discretionary in admiralty. Sabine Towing Co. v. Brennan, 5 Cir., 85 F.2d 478. While we find it difficult to point to any rational reasoning why the rights of parties should differ where a Jones Act proceeding is filed as a civil action, we can only state that Congress, in its wisdom, has seen fit to disallow pre-judgment interest in *civil* actions, 28 U.S.C.A. § 1961. Admittedly, there is a conflict of authority on the question. In Moore-McCormack Lines, Inc. v. Richardson, 2 Cir., 295 F.2d 583, and the Petition of Midwest Towing Company, E.D.Ill., 203 F.Supp. 727, the admiralty courts recognized that pre-judgment interest constituted a part of the loss and drew an analogy to the necessity of discounting sums paid now on account of future losses, thereby declaring that it was inequitable not to make appropriate compensation for the delay in discharging the obligation, even though the fault rested with the normal process of litigation and not with the parties. In Sabine Towing Co. v. Brennan, supra, the admiralty court modified the judgment to provide for interest from the date of the decree, rather than for interest from the date of the commissioner's report. Other courts have declined to allow pre-judg-

ment interest in admiralty under the analogy of the rule in civil cases. Petition of Petroleum Tankers Corporation, S.D.N.Y., 204 F.Supp. 727. It is clear that pre-judgment interest has been refused in Jones Act cases on the *civil* side of the court. Briggs v. Pennsylvania R. Co., 2 Cir., 164 F.2d 21, 1 A.L.R.2d 475, affirmed, 334 U.S. 304, 68 S.Ct. 1039, 92 L.Ed. 1403; Casey v. American Export Lines, 2 Cir., 173 F.2d 324; Moore-McCormack Lines, Inc. v. Amirault, 1 Cir., 202 F.2d 893; Duvernay v. Alcoa Steamship Co., D.C., 217 F.Supp. 698. And in Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, **74** S.Ct. 202, 98 L.Ed. 143, it is said:

"* * * [T]he substantial rights of an injured person are not to be determined differently whether his case is labeled 'law side' or 'admiralty side' on a district court's docket."

■ In the absence of a controlling decision from the Fourth Circuit or the United States Supreme Court, and without an express statute prohibiting pre-judgment interest in admiralty, we conclude that, while the matter is discretionary, moratory interest on a death claim under the Jones Act is sufficiently liquidated to allow same. Unlike the personal injury claim, the basis for the proper determination of damages is essentially fixed upon death. Factors involving earnings, the extent of the dependency, the expectancy of life, the discounted value of the dollar, and other items tending to establish the total award are not changed by subsequent developments. We are not concerned with the extent of disability and the possibilities of recovery as in personal injury cases. The loss is fixed even though not determined by judicial process. As was said in Moore-McCormack Lines, Inc. v. Richardson, 2 Cir., 295 F.2d 583, 594:

"But whether an action has been deliberately prolonged or not, the defendants who are ultimately directed to pay have had the use of the money declared to be due. If it be only fair to discount sums paid now on account of future loss which would not

be due until some years in the future, see Chesapeake & Ohio R. R. Co. v. Kelly, 1918, 241 U.S. 485, 36 S.Ct. 630, 60 L.Ed. 1117; O'Connor v. United States, 2 Cir., 1959, 269 F.2d 578, 585, it is, by the same token, inequitable not to make appropriate compensation for delay in discharging the obligation."

In adopting the reasoning in the foregoing case, the court is aware of the fact that damages were there sought under the Death on the High Seas Act, 46 U.S.C.A. § 761, et seq. Not overlooked is footnote 13 which reads: "We do not reach the question, unresolved in this circuit, as to whether interest *qua* damages may be given upon any portion of the recovery in a Jones Act suit brought in admiralty."

We hold, therefore, that interest shall run from December 9, 1958, until paid, since the beneficiaries are still alive and their status has not changed.

Summarizing the comments hereinabove mentioned, a decree shall be presented granting judgment in favor of the libelant in the total sum of $73,-832.18, with interest at 3½% per annum[5] from December 9, 1958, until the date of the entry of the final decree herein, and 6% on the aggregate sum thereafter until paid. The aforesaid sum of $73,832.18, together with proportionate interest, shall be paid, after first deducting reasonable attorney's fees and nonrecoverable costs, as follows:

| | |
|---|---|
| To Valerie Jean Gardner | $57,969.76 plus interest |
| To Guardian of Robert Edward Gardner, III | 7,337.58 plus interest |
| To Guardian of Lou Ann Gardner | 8,524.84 plus interest |

Proctor for libelant will prepare and present, after submission to proctor for respondents for inspection and endorse-

ment, an appropriate decree in accordance with this memorandum which is adopted pursuant to Admiralty Rule 46½. Taxable court costs shall be assessed against respondents.

---

5. Following the reasoning in Moore-McCormack Lines, Inc. v. Richardson, 2 Cir., 295 F.2d 583, 595:
"Since the allowance for loss of future benefits to the dependents of the four deceased men are discounted at 4% it would seem appropriate for the district judge also to compute interest at a 4% rate on the allowances for pecuniary losses sustained prior to decree."