**SAN PEDRO COMPANIA ARMADORAS, S.A., et al., Appellants,**

v.

George Nicholas **YANNACOPOULOS,** Appellee.

George Nicholas **YANNACOPOULOS,** Appellant,

v.

**SAN PEDRO COMPANIA ARMADORAS, S.A. et al., Appellees.**

**No. 22024.**

United States Court of Appeals Fifth Circuit.

March 16, 1966.

Rehearing Denied May 2, 1966.

Bryan F. Williams, Jr., Edward J. Patterson, Jr., Galveston, Tex., Royston, Rayzor & Cook, Galveston, Tex., of counsel, for appellants San Pedro Compania Armadoras, S.A., and others.

Arthur J. Mandell, Mandell & Wright, Houston, Tex., for appellee-appellant, Yannacopoulos.

Before JONES and BROWN, Circuit Judges, and DYER, District Judge.

### DYER, District Judge:

George Nicholas Yannacopoulos, a native and resident of Piraeus, Greece, instituted this action on January 8, 1959, in Beaumont, Texas, by warrant of seizure and writ of foreign attachment against the S. S. Merlin, a Liberian flag vessel owned by appellant, San Pedros Compania Armadoras, S. A., a Panamanian corporation wholly owned by foreigners.

The S. S. Merlin was managed, crewed and operated by appellant's general agents in Piraeus, Greece, Goulandris Brothers Limited, who employed Yannacopoulos on December 15, 1955. He was given transportation to Brake, Germany, where he signed articles and joined the vessel, first as deck boy and later as an able bodied seaman.

Shortly after midnight on June 5, 1958, while the vessel was moored to a dock in Leningrad, Russia, he was ordered by the Master to go into the forward peak tank to obtain rat guards and place them on the lines running from the vessel to the dock. This tank was covered with a heavy steel tank top about fifty-two inches wide and fifty-six inches long, fitting on a coaming about twenty-one inches high. The tank cover was equipped with an open eye. Immediately behind the tank top there was a steel stanchion with an open hook attached to it which was designed to fit into the open eye of the tank top. The hook was worn thin, had play in it, and was not long enough to reach beyond the thickness of the eye itself. It was worn and defective.

Generally, two men accomplished this task. Yannacopoulos requested additional help but was refused. Accordingly, he proceeded to carry out the order. He picked up the tank top and put the hook through the open eye. Inside of the tank top there were two rungs or hand holds, especially placed there for those going in and out of the forepeak tank to have something to hold onto while ascending or descending. With his right hand he held onto the first rung inside the tank top, stepped on the first step leading into the tank, then as he descended into the tank, he used his right hand to hold onto the second rung, placing his left hand on the hatch coaming for support. About this time there was a slight movement in the tank top, the hook slid out of the eye in the tank top and it came down upon Yannacopoulos' left hand between the coaming and tank top, crushing it. Although the Master was not present when the injury occurred, in response to written interrogatories, he testified that there

was a rope attached to the tank top which could have been used to secure it. Yannacopoulos denied this. A few days after the accident, there was a rope tied around the tank top.[1]

Yannacopoulos was hospitalized in the U. S. S. R., then taken to and examined in Poland and finally hospitalized in Germany. From there he was returned to Greece where he underwent further treatment.

After the vessel was attached, a bond was set for its release and the Court, after hearing on November 25, 1959, granted appellant's motion to decline jurisdiction, but conditioned the dismissal upon (1) the appellant's appearing and posting security in the sum of $50,000 to abide a decree in any proper legal proceeding brought by Yannacopoulos within ninety days in the Kingdom of Greece; and (2) if appellant failed to appear and answer or file such security in Greece, Yannacopoulos was given leave to move to set aside the order of dismissal.

On December 7, 1959, Yannacopoulos brought suit in a court of competent jurisdiction in Greece and service was made on the State Attorney rather than on appellant's general agents, Messrs. Goulandris Brothers, Limited. Appearance day for appellant was March 7, 1960, but having received no information about the pendency of the suit, it did not appear. Yannacopoulos cancelled the setting from the trial calendar and left the suit pending until November 28, 1960, when it was dismissed.

On March 24, 1960, Yannacopoulos filed a motion to set aside the order of November 25, 1959. This was brought to the attention of appellant on May 28, 1960, who thereupon filed a motion for more definite statement, and thereafter took the position that the action instituted in Greece was a sham because service was never properly effected upon appellant,

and further, that the motion for reinstatement was not filed within ninety days as required by the conditional order of dismissal.

■ We find no merit in the latter contention because the suit in Greece was timely filed and the subsequent proceedings to reinstate the cause could not have been instituted within the ninety day period. We find it unnecessary to determine the validity of the service made upon appellant in Greece because it is clear that appellant had actual knowledge on June 18, 1960, of the pendency of the suit, the style thereof, and the court in which it was filed in the Kingdom of Greece, yet did nothing until September 7, 1960, when it applied to the Greek Court to dismiss the action then pending upon the ground that Yannacopoulos had not strictly complied with the provisions of the Greek law for the service of process. Appellant did not at any time, however, *appear to defend* the case *nor file security of $50,000 to abide decree.*

■ On September 7, 1960, the Court, having before it the documents proving institution of the suit in Greece, the service on appellant and its failure to appear or post security, properly entered the order vacating the order of November 25, 1959, reinstated the cause and set it for trial to be heard in its regular order. Indeed, the record then before the Court made it manifest that the appellant had failed to comply with the terms of the order of dismissal. A second motion to dismiss filed June 13, 1962, almost two years later, based on essentially the same grounds, was carried with the case and overruled in the final decree. The Court's ruling in the first instance being correct, it was again so in the final decree, not to mention the fact that after the case had been pending for more than three and one-half years,

---

1. The Court made no finding concerning the presence of the rope at the time of the accident. It stated:

    "8. The hook was defective, worn and not equipped with a locking device or a latch, so that it would stay in place without disengaging itself while persons such as Libellant were going into the forepeak tank and holding onto the hand holds inside of the cover while so descending in it."

equitable principles applied by an Admiralty Court would not have permitted a dismissal with the serious probability of leaving Yannacopoulos without any remedy or recourse in any jurisdiction.

Finally, appellant questions the propriety of the acceptance of jurisdiction by the district court, claiming that the order overruling the motion to dismiss was plainly erroneous because there were no contacts with the United States which would justify retention of the case. It leans heavily on Lauritzen v. Larsen, (1952), 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254; and Romero v. International Terminal Operating Co., et al., (1959), 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368, as setting the standard for judicial consideration of jurisdiction in claims made by foreigners under the general maritime law.

■ With the observation that these cases were primarily concerned with the application of the Jones Act, and that there have been numerous cases decided since Lauritzen brought by Greek seamen employed on Panamanian vessels on which they were injured, flying the Liberian flag,[2] on which the Courts proceeded without consideration to contacts with the United States,[3] we find it unnecessary to consider the question of *contacts* in this case because the appellant, by repeatedly offering to appear and post security in the Greek Court in accordance with the order of November 25, 1959, submitted itself to the Court's jurisdiction. It cannot now be heard to complain.

The judgment of the district court in entertaining and accepting jurisdiction and reinstating the libel should therefore be and it is affirmed.

In his cross appeal, Yannacopoulos complains that the district court's finding of contributory negligence was clearly erroneous, and that the Court applied the rejected doctrine of assumption of risk.

■ The only evidence to support a finding of contributory negligence was the Master's responses to written interrogatories that, at the time of the injury (although he was not present), there was a rope attached to the tank top which he claimed could have been used to secure it. Yannacopoulos denied this and it was otherwise uncorroborated. Appellant took pictures of the tank top while the Merlin was in Beaumont, Texas, at the time of the seizure but they were not introduced, nor any explanation offered for the failure to do so. While the Court made no precise finding of fact concerning a rope being attached to the tank top, it impliedly rejected the Master's testimony to this effect.[4] We think it was correct in so doing. If, however, this not be so, in the circumstances of this case, we do not credit the Captain's answer to interrogatories, for although we are bound by the clearly erroneous doctrine of McAllister v. United States, (1944), 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20, it is subject to the modification that it does not apply with equal force, where, as here, the appellate court is in as good a position as the lower court to evaluate the testimony that is crucial to the case. Bertel, et al. v. Panama Transport Co., et al., 2 Cir. 1953, 202 F.2d 247; Kulukundis v. Strand, 9 Cir. 1953, 202 F.2d 708; Spanos v. The Lily, et al., 4 Cir.

**2.** It is noteworthy that the maritime law of Liberia provides in pertinent part, in Chapters 1 and 10, and Section 223 of Chapter 8 of Title 22, under Section 10:

"Insofar as it does not conflict with any other provisions of this title, the non-statutory General Maritime Law of the United States of America is hereby declared to be and is hereby adopted as the General Maritime Law of the Republic of Liberia."

**3.** Conte v. The Rio De La Plata, D.C., 169 F.Supp. 164, 165; Conte v. Flota Mercante Del Estado, 2 Cir., 277 F.2d 664; Kontos v. S.S. Sophie C, D.C., 184 F.Supp. 835; Retzekas v. Vygla Steamship Co., S.A., D.C., 193 F.Supp. 259; Perdikouris v. The S.S. Olympos, D.C., 196 F.Supp. 849; Aivaliotis v. S.S. Atlantic Glory, D.C., 214 F.Supp. 568.

**4.** See finding of fact number 8 in footnote 1 supra.

1958, 261 F.2d 214; cf. Bisso v. Waterways Transportation Co., Inc., 5 Cir. 1956, 235 F.2d 741; Higgins, Incorporated v. Hale, et al., 5 Cir. 1958, 251 F.2d 91.

■■ The tank top was in an unseaworthy condition because it could not be secured while persons such as Yannacopoulos were going into the tank. Since he had no choice but to use it as it was, he cannot be made to assume the risk of injury when using the unseaworthy appliance in the regular discharge of his duties. Cox v. Esso Shipping Company, 5 Cir. 1957, 247 F.2d 629. To do so would permit the rejected doctrine of assumption of risk to be applied under the label of contributory negligence. Smith v. United States, 4 Cir. 1964, 336 F.2d 165; Hildebrand v. United States, 2 Cir. 1955, 226 F.2d 215.

Finding of fact number 15, that Yannacopoulos was contributorily negligent to the extent of fifty percent, should be and it is set aside and the district court is directed to enter a decree for libelant in the full amount of Twenty Thousand and No/100 Dollars ($20,000.00), together with the maintenance award.

Affirmed in part and reversed in part.