Mrs. Mae Frances NEAL, Individually and the minors, James Neal, Jr., et al., etc., Appellants,

v.

SAGA SHIPPING CO., S. A., et al., Appellees.

No. 24908.

United States Court of Appeals Fifth Circuit.

Jan. 23, 1969.

Rehearing Denied Feb. 21, 1969.
Certiorari Denied June 23, 1969.
See 89 S.Ct. 2143.

Arthur J. Mandell, Houston, Tex., for appellants.

Theodore Goller, E. D. Vickery, Houston, Tex., for appellees.

Before COLEMAN and GODBOLD, Circuit Judges, and RUBIN, District Judge.

RUBIN, District Judge:

This action for death of a longshoreman caused by unseaworthiness of the vessel aboard which he was loading cargo was tried to the court without a jury. The experienced trial judge rendered judgment for the widow and children of the decedent. He computed the damages at $107,173.94, found the decedent to have been contributorily negligent to the extent of 50%, and therefore reduced the net award to $53,586.67. The plaintiffs appealed, contending that both the trial court's finding of contributory negligence and the manner in which it computed damages were clearly erroneous.

## I. CONTRIBUTORY NEGLIGENCE

■■ Despite the zeal with which it is contended that the trial judge was mistaken in finding contributory negligence, there is no merit to the appeal from this factual conclusion. The crux of the matter was whether a flagman warned a gang of longshoremen, which included the deceased, that a load of cargo was being lowered into the hold of a vessel. The flagman and one of the gang testified that no warning was given. The winch operator and the working foreman said it was. There was some conflict between a statement given by one of the appellant's witnesses shortly after the accident and his testimony on the stand. Resolution of the issue depended on the credibility of the witnesses. This was clearly a matter within the trial court's province. We may not set the judgment aside unless it is clearly erroneous. McAllister v. United States, 1954, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20; Bisso v. Waterways Transportation Co., 5 Cir., 1965, 235 F. 2d 741; Higgins, Inc. v. Hale, 5 Cir., 1968, 251 F.2d 91. We do not find it to be, for we are not "left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 1948, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L. Ed. 746.

■ Appellants urge the novel proposition that the decedent could not have been held contributorily negligent unless there was substantial evidence that he actually heard the warning and disregarded it. They argue that a sufficient warning is one that is heard. But it is just as much negligence not to hear what one should have heard as it is not to do what one should have done. The trial court found that adequate warning had been given and that the decedent should have heard it. This was a sufficient basis to support a finding that the decedent was negligent.

■ A seaman cannot be charged with contributory negligence because he uses an unseaworthy part of a vessel in its defective condition if he has no choice but to use it as it is. San Pedro Compania Armadoras, S.A. v. Yannacopoulos, 5 Cir., 1966, 357 F.2d 737. Our reasoning in Armadoras was that to consider such conduct contributory negligence would be to "permit the rejected doctrine of assumption of risk to be applied under the label of contributory negligence." 357 F.2d at 741. But here there was ample opportunity for the decedent to move aside to a safe place after the warning was given.

There was testimony sufficient to establish contributory negligence by a preponderance of the evidence.[1] This was not tantamount to a finding of assumption of risk. Neither a blue water seaman nor a Sieracki-sailor-longshoreman assumes any risk of unseaworthiness.[2] But the contributory negligence of the seaman is to be considered in reduction of damages occasioned by the owner's failure to provide a seaworthy vessel.[3]

Appellants contend that the unseaworthiness of the SS ELLIN was brought about by a violation of the "Safety and Health Regulations for Longshoremen," that these were enacted pursuant to a statute and have the force of law, and that the defense of contributory negligence is therefore not available for such a violation.

The conduit for this argument is the Jones Act.[4] The Jones Act creates an action for personal injury or death of seamen occasioned by the shipowner's negligence and affords seamen the same additional rights against their employer as those enjoyed by railroad employees under the Federal Employers' Liability Act (FELA)[5] and other federal statutes in personal injury and death actions. Section 51 of FELA imposes liability on the employer for injury or death resulting from the negligence of an officer, agent, or employee, "or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." As a further measure of enforcement Section 53 of FELA provides that an employee shall not be held guilty of contributory negligence and shall not suffer diminution of damages, "in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee."

The Safety Appliances Act, 27 Stat. 531, as amended, 45 U.S.C. §§ 1–16, prescribes safety requirements for railroad appliances and equipment. It was enacted to reduce the hazards to railway employees and passengers and to impose a penalty for violations.[6] Hence, there is liability without diminution for contributory negligence if

1. The burden of proving the plaintiff's contributory negligence rests on the defendant. See, e.g., United States v. Smith, 5 Cir., 1955, 220 F.2d 548; Candiano v. Moore-McCormack Lines, Inc., 1966, S.D.N.Y., 251 F.Supp. 654, 661, affirmed, 2 Cir., 1967, 382 F.2d 961. It is sometimes said that there is a presumption that a deceased exercised due care for his own safety when there is little or no evidence of contributory negligence. See, e.g., Cooney v. United States, W.D.Wash.1946, 74 F.Supp. 26. However it is doubtful that there is indeed such a presumption. It appears to be a better statement of the applicable rule that contributory negligence will not be presumed, and must be established by a preponderance of the evidence. See Looney v. Metropolitan R.R. Co., 1906, 200 U.S. 480, 26 S.Ct. 303, 306, 50 L.Ed. 564; Nolan v. Greene, 6 Cir., 1967, 383 F.2d 814, 817. See also, 9 Wigmore, Evidence §§ 2507–10.

2. Palermo v. Luckenbach S.S. Co., 1957, 355 U.S. 20, 78 S.Ct. 1, 2 L.Ed.2d 3; Socony Vacuum Oil Co. v. Smith, 1939, 305 U.S. 424, 432, 59 S.Ct. 262, 83 L.Ed.

265; Holley v. The Manfred Stansfield, 4 Cir., 1959, 269 F.2d 317, 322.

3. Palermo, note 2 supra; Pope & Talbot, Inc. v. Hawn, 1953, 346 U.S. 406, 408–409, 74 S.Ct. 202, 204–205, 98 L.Ed. 143; Seas Shipping Co. v. Sieracki, 1946, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099; Socony, note 2 supra; Symonette Shipyards, Ltd. v. Clark, 5 Cir., 1965, 365 F.2d 464; Bryant v. Partenreederei-Ernest Russ, 4 Cir., 1964, 330 F.2d 185.

4. 41 Stat. 1007, 1920, 46 U.S.C. § 688.

5. 35 Stat. 65, 1908, 36 Stat. 291, 1910, 53 Stat. 1404, 1939, 45 U.S.C. §§ 51–60.

6. Even though the "Safety and Health Regulations for Longshoremen" are promulgated under the authority of the Longshoremen's and Harbor Workers' Compensation Act as standards for the stevedore to follow, they define a reasonable standard for the shipowner. Hence their violation may render the vessel unseaworthy. Provenza v. American Export Lines, Inc., 4 Cir., 1963, 324 F.2d 660. Similarly, violation of the Coast Guard

an employee subject to FELA is injured or killed as a result of a violation of the Safety Appliances Act. See, e. g., San Antonio & A.P.R. Co. v. Wagner, 1916, 241 U.S. 476, 36 S.Ct. 626, 60 L.Ed. 1110.

By virtue of the Jones Act, Section 53 of the FELA has been applied to violations of maritime safety statutes analogous to the Safety Appliances Act. The leading case is Kernan v. American Dredging Co., 1958, 355 U.S. 426, 78 S.Ct. 394, 2 L.Ed.2d 382, where violation of a Coast Guard navigational rule was held to result in an unseaworthy condition and preclude a finding of contributory negligence "without regard to whether the injury flowing from the breach was the injury the statute sought to prevent." 355 U.S. at 433, 78 S.Ct. at 398, 2 L.Ed.2d at 392.

The appellants' argument is based on the hypothesis that the Jones Act applies to *longshoremen* and the resultant conclusion that they are entitled to the protection of the Federal Employers' Liability Act. But the premise itself is faulty: on the very day the Supreme Court recognized in *Sieracki*[7] that the vessel owner owes a warranty of seaworthiness to longshoremen because the duty to provide a seaworthy vessel extends to all who perform the ship's services, it held in Swanson v. Marra Brothers[8] that a longshoreman cannot recover under the Jones Act from his employer, the stevedore, for injuries occurring while working on a pier.[9] The rationale of *Swanson* went beyond its precise holding: "We must take it that the effect of these provisions of the Longshoremen's Act is to confine the benefits of the Jones Act to the members of the crew of a vessel plying in navigable waters and to substitute for the right of recovery recognized by the Haverty case only such rights to compensation as are given by the Longshoremen's Act." 328 U.S. at 7, 66 S. Ct. at 872.

Longshoremen are entitled to the warranty of seaworthiness. They are not entitled to the statutory remedy provided by the Jones Act because they do not meet the requirements of that Act. "Sieracki does not abrogate the rule that the Jones Act applies only where the relationship of employer and employee exists."[10]

The kingpin having been removed from the argument, the whole structure falls. An extension of the Jones Act requires a legislative change, and this assuredly is the prerogative of the Congress.[11]

## II. DAMAGES

There is little about the way the trial court computed damages that the appellants do not consider erroneous. The

Regulations concerning shipment of hazardous articles may constitute negligence and make the shipowner liable in tort to a longshoreman injured as a result. Marshall v. Isthmian Lines, Inc., 5 Cir., 1964, 334 F.2d 131.

7. Seas Shipping Co. v. Sieracki, 1946, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099.

8. 1946, 328 U.S. 1, 66 S.Ct. 869, 90 L.Ed. 1045.

9. This was based on provisions of the Longshoremen's and Harbor Workers' Compensation Act. 44 Stat. 1424, 1927, 33 U.S.C. §§ 901–950.

10. Kyles v. James W. Elwell & Co., 7 Cir., 1961, 296 F.2d 703, 704. See also Swanson v. Marra Bros., Inc., 1946, 328 U.S. 1, 66 S.Ct. 869, 90 L.Ed. 1045; Price v. SS Yaracuy, 5 Cir., 1967, 378

F.2d 156 (dicta) ; Paduano v. Yamashita Kisen Kabushiki Kaisha, 2 Cir., 1955, 221 F.2d 615; Continental Cas. Co. v. Thorden Line, 4 Cir., 1951, 186 F.2d 992; Dell v. American Export Lines, Inc., S.D.N.Y., 1956, 142 F.Supp. 511; Rosario v. Waterman Steamship Corporation S.D.N.Y., 1957, 158 F.Supp. 537.

11. We perceive no such intent in the language gleaned by appellant from the opinion in Flowers v. Savannah Machine & Foundry Co., 5 Cir., 1962, 310 F.2d 135, that "such vicarious seamen are entitled to comparable, if not identical, protection and sanctions" as those afforded traditional seamen. The opinion there specifically states, "Of course, the Sieracki-seaman is not a real full-fledged seaman for all purposes." 310 F.2d at 139.

trial court first determined the decedent's work-life expectancy to have been 18 years. (Appellants say this is wrong: it should have been 21). He then found the decedent's average earnings to have been $7,750. (Appellants say this is "extremely conservative" but not wrong. However, they contend it was error not to add to the gross income the present value of future contributions to be made by the decedent's employer to a welfare fund to buy hospitalization insurance.) He then reduced the annual gross income by 30% for cost of the decedent's "union dues, taxes, social security, and other personal expenses." (Appellants say this was wrong: there should have been no deduction for "taxes" and that it would therefore be "fair" to change the reduction to 15%).

The remainder of the computation is shown in the left hand column. The appellant's suggestions of error are set forth to the right of each item.

| DAMAGES | | ALLEGED ERROR |
|---|---|---|
| Loss of Contribution | | Erroneously computed for the reasons set forth above. |
| To Wife | $32,984 | |
| To Children | 32,944 | |
| Loss of Retirement Benefits | 3,257 | None. |
| Pain and suffering from the date of injury to the date of death, February 11, 1966 to March 4, 1966 (21 days). | 5,000 | "Grossly inadequate and therefore clearly erroneous." |
| Loss of services rendered by deceased to the widow | 2,547 | "Grossly inadequate and therefore clearly erroneous." |
| Loss of nurture and guidance at the rate of $360 per year to each of the seven children | 25,978 | "Grossly inadequate and therefore clearly erroneous." |
| Medical and Funeral Expenses | 4,423.94 | None. |
| Total | $107,173.94 | |

Although we review the appellant's arguments separately for the light that our conclusions may cast on future awards and on jury instructions in cases that may be tried to a jury, we start with the premise, "[T]he amount of damages sustained by an injured person is a question of fact, Mason v. United States, 2 Cir., 177 F.2d 352, 354, and upon an issue so difficult of quantitative determination, we do not interfere unless satisfied that the award is so 'plainly out of measure as to be "clearly erroneous."' Carroll v. United States, 2 Cir., 133 F.2d 690, 693, 694." Lukmanis v. United States, 2 Cir., 1953, 208 F.2d 260, 261.[12] Under Rule 52(a) of the Federal Rules of Civil Procedure,

12. Emphasis supplied. In Lukmanis the trial court itemized the award. See also Mitchell v. Evelyn C. Brown, Inc., 1 Cir., 1962, 310 F.2d 420, in which the court found clear error.

now applicable to admiralty actions as a result of the July, 1966 amendments to the Federal rules, "Findings of fact shall not be set aside unless clearly erroneous." Where damages are fixed in a lump sum, "[I]t is not our duty to determine whether, if we were triers, we would have awarded damages in the same, a greater, or a less amount. It is our duty to determine only whether we can say that the amount awarded was so inadequate that it was clearly erroneous, that is unjust." Sanders v. Leech, 5 Cir., 1946, 158 F.2d 486, 488.

■■■ There was evidence that, had the decedent lived, he might have continued to work 21 years longer. But he might have died in the meanwhile. Work-life expectancy is an actuarial estimate of the average span of time that would elapse for a man of the decedent's age until he would either die or cease to work, whichever event occurred sooner. The trial court properly chose to rely upon this as a more accurate measure of the probable earning period of which the decedent was deprived.

■■■ The trial court reduced the decedent's earnings by 30% to cover his business and personal expenses, mentioning "taxes" as one of the items included. It will be noted that no reduction was made for income taxes as such. It is entirely correct, however, that the appellants must continue to pay real property taxes, sales taxes and the like. While there would have been sales taxes and excise taxes on some of the decedent's expenditures, it is idle to speculate that these were the specific items intended by the trial court. It is evident from his opinion that the trial judge listed "taxes" merely as an illustration of the general type of expenses the decedent would have incurred. The

decedent paid 5% of his wages in union dues and 4.4% in social security taxes. He required food, clothing, drugs and toilet articles. He operated a personal car in addition to the family automobile. His hobby was fishing and the trial judge need not have been Izaak Walton to know this entailed some expense. The estimate that these expenses would amount to 30% of the decedent's earnings was fair.[13] Similarly, the amounts allowed for loss of the services that the decedent would have rendered around the household and for the loss of nurture and guidance are well within the bounds of proper judicial discretion.[14]

The appellants were deprived of hospitalization and medical insurance coverage by the decedent's death. His employer and the longshoremen's union had contracted for a pension and welfare fund to which the employer contributed a total of 83¢ per hour for each employee. Employees who worked at least 1200 hours a year were eligible to receive benefits from the fund. Of the employer's contribution, 37¢ per hour was applied to purchase insurance providing both a death benefit and group hospitalization and medical benefit, the latter covering Mrs. Neal and the decedent's eligible children under 19 years of age as well as the decedent. The amount of the employer's contribution required to purchase life insurance, as distinguished from hospitalization insurance, was not established; there was therefore no evidence of the amount of the contribution for hospitalization insurance for dependents, although there was an effort to prove the cost of obtaining other insurance. Upon the decedent's death, his widow received $12,000 in life insurance benefits, and the hospitalization insurance ceased.

13. This is of course a factual question and is not to be determined solely by precedent. But the percentage reduction was consistent with the jurisprudence. See, e.g., Gardner v. National Bulk Carriers, E.D.Va., 1963, 221 F.Supp. 243, aff'd per curiam, 4 Cir., 1964, 333 F.2d 676, where a total deduction of 41⅔% from the decedent's gross annual earnings was allowed for the decedent's living expenses. In *Gardner* the decedent was a seaman who spent the greater portion of each year away from home.

14. See cases cited and discussion at notes 12 supra and 16 infra, as well as text at those notes.

 Were the question before us simply whether employer contributions to purchase hospitalization insurance for his employee's dependents should be taken into account in an action for the employee's death, if properly established, our answer would be in the affirmative.[15] But the question comes to us in another way: was it clearly erroneous for the trial judge to say, on the record before him, that they could not be considered a part of Neal's wages because they were made to a general fund for the benefit of all longshoremen upon the happening of certain contingencies, and it would be speculative to assume that Neal and his family would receive benefits from the fund equal to the amount of contributions made. And the answer can be only that this was a permissible conclusion.

■■ In fine, the award as a whole was within the ambit that the law entrusts to the fact finder in determining damages. There is no requirement that a jury, in the absence of special interrogatories, or a trial court, sitting as trier of fact, itemize the components that enter into an award of damages. Damages in personal injury cases can not be computed by mathematical formulae nor derived from fixed principles susceptible of being programmed into a computer. Another trier of fact might properly have used a method slightly different from the one the trial court did. He might well have fixed the damages at more or less than the amount that served as a basis for the award here.[16] Neither judge nor jury is expected to be infal-

lible in such matters. The standards by which damages are determined leave room for the play of judgment and discretion of the type properly exercised by the trial court. Here it cannot be said that the result he reached was clearly erroneous.

The judgment is affirmed.

---

15. This result would be consonant with the theory that damages in a civil action are based on the principle of compensation for all financial losses sustained by the injured party. Miller v. Robertson, 266 U.S. 243, 45 S.Ct. 73, 69 L.Ed. 265; Stringer v. Dilger, 10 Cir., 1963, 313 F. 2d 536.

16. In Gardner v. National Bulk Carriers, Inc., 4 Cir., 1964, 333 F.2d 676 affirming E.D.Va.1963, 221 F.Supp. 243, the Fourth Circuit said:
    "The determination of damages is a factual question, and while we might have reached a different method of ar-

riving at that result, we cannot say that either the final result or the method used by the court in reaching the result was clearly erroneous. McAllister v. United States, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20 (1954). We must reject counsel's suggestion that we lay down precise formulae. 'Insistence on mathematical precision would be illusory and the judge or juror must be allowed a fair latitude to make reasonable approximations guided by judgment and practical experience.' Whitaker v. Blidberg Rothchild Company, 296 F.2d 554, 555 (4 Cir., 1961)." 333 F.2d at 677.