Hillis W. FAUDREE, Appellee,

v.

IRON CITY SAND & GRAVEL COMPANY, Appellant.

No. 13964.

United States Court of Appeals
Third Circuit.

Argued Nov. 5, 1962.

Decided April 4, 1963.

Robert E. Wayman, Pittsburgh, Pa. (Dickie, McCamey, Chilcote & Robinson, Pittsburgh, Pa., on the brief), for appellant.

Louis C. Glasso, Pittsburgh, Pa., for appellee.

Before GANEY and SMITH, Circuit Judges, and AUGELLI, District Judge.

ANTHONY T. AUGELLI, District Judge.

This is an appeal from a judgment entered on a jury verdict in favor of plaintiff for personal injuries sustained as a result of defendant's negligence, following denial of a motion for a new trial.

The action was brought under the Jones Act, 46 U.S.C.A. § 688. There is no substantial dispute concerning the manner in which the accident happened. On February 28, 1956, the date on which plaintiff was injured, he was in the employ of defendant as Chief Engineer aboard the vessel M/V Prosperity, owned and operated by defendant, which vessel was then in navigation. At about 8:30 P.M. on said date of February 28, plaintiff, in the performance of his duties aboard the vessel, was in process of cleaning out a clogged suction line by means of compressed air. The suction line was used to draw water from the river into the vessel where the water, after passing through a strainer, would be used for sanitation and other purposes. A fellow employee, who had been instructed to turn on the air when a prearranged signal was given by plaintiff, did so before such signal was given, with the result that the sand, dirt and other debris that had accumulated in the suction line was expelled therefrom, striking plaintiff in the face and causing him to fall backward and hit his head against an angle iron.

The trial resulted in a verdict, signed by all of the jurors, which verdict, in handwriting, read as follows:

"And now, to wit: Nov. 8th, 1961, we, the Jurors empanelled in the above-entitled case, find that the Iron City Sand & Gravel Co. was negligent & we find that we the undersigned agree to award Hillis W. Faudree $45,000 for inability to fully fulfill his duties & $10,000 for pain and suffering caused by his accident due to this negligence."

Pursuant to this verdict the court below directed the Clerk to enter judgment in favor of plaintiff and against defendant in the sum of $55,000.00, together with costs. On November 11, defendant filed a motion for a new trial. This was denied on January 23, 1962, and on that date the court made a final order that judgment be entered "in favor of Hillis W. Faudree, plaintiff, and against Iron City Sand and Gravel Company, defendant, in the amount of $55,000.00 together with costs." The appeal to this Court followed.

The grounds urged here for reversal are the same as those argued below for a new trial. We shall consider them in the same order in which they appear in defendant's brief.

The first is that the verdict, as rendered, is a nullity because it was in-

definite, improper and contrary to the instructions of the court.

In support of these contentions defendant argues that the verdict is couched in language that has no meaning in the law; that the jury failed to follow the instructions of the court as to items of damage to be considered; that the $45,-000.00 award made to plaintiff for "inability to fully fulfill his duties" was not specifically made as compensation for either lost wages or for impairment of earning power; and that "inability to fully fulfill * * * duties", is not an item of damages cognizable under the law.

The trial judge, in a comprehensive charge,[1] properly instructed the jury on the law governing liability in this type of case, and then told the jurors that if they found liability to exist, they could consider the following elements of damages: (a) loss of wages; (b) impairment or diminution or reduction of plaintiff's ability to work and earn money; and (c) pain, suffering and inconvenience. Each of these elements, and the factors to be considered in determining whether or not an award should be made with respect to any one of them, was fully explained to the jury. At the conclusion of the charge the court, referring to the three elements of damages, instructed the jury to "[b]ulk them together, if you find all exist and you find in favor of plaintiff and against defendant in the sum of blank dollars".

The main thrust of defendant's argument is directed against the $45,000.00 award.[2] This award, says defendant, was not specifically made as compensation for either lost wages or for impairment of earning power; it was made to compensate plaintiff for his "inability to fully fulfill his duties". Defendant calls attention to the fact that neither this nor any similar language was used by the trial judge in his instructions to the jury on the damage elements involved in the case, and argues that such language cannot be construed as compensation for impairment of earning power. We do not agree.

The record shows that at most plaintiff lost from 7 to 10 days work from the date the accident happened on February 28, 1956, until the Spring of 1961, when plaintiff's job was terminated. It does not appear from the language used by the jury in its verdict that any award was made for lost wages. An award was made for pain and suffering. The remaining element of damages the jury was called upon to consider and determine had to do with plaintiff's claim that he suffered an impairment of earning power notwithstanding increased earnings following the accident. Our consideration of the verdict, viewed in the light of the testimony adduced at the trial,[3] satisfies us that the jurors did understand the court's instructions as they related to the different damage elements involved in the case, and that they intended to award to plaintiff the sum of $45,000.00 to compensate him for an impairment of earning power sustained as a result of the accident.

It is well settled that no particular form of words need be used by a jury in rendering its verdict. Any words which clearly convey the meaning and

---

1. No exceptions to the charge were taken by defendant's counsel and when, at the close thereof, he was asked if he had any additional instructions he wanted the court to give the jury, counsel said he had none.

2. No special point is made by defendant of the jury's failure to follow the court's instructions to bulk together such items of damage as were found to exist; nor does defendant specifically complain about the award of $10,000.00 made to plaintiff for pain and suffering.

3. At the trial plaintiff testified concerning the nature of his employment, the difficulties he experienced in performing his usual duties as chief engineer following the accident, the assistance he needed and received from others in order to enable him to do his work, the prolonged use of tranquilizers to help him continue to carry on, and efforts made to secure other employment. This and similar testimony all pointed to an impairment of plaintiff's earning power.

intention of the jury are sufficient. "The test is whether the verdict clearly manifests the intention and finding of the jury upon the issue submitted to them." Smyth Sales v. Petroleum Heat & Power Co., 141 F.2d 41 (3 Cir., 1944). See also 53 Am.Jur., Trial, § 1050. We believe the language used by the jury is sufficiently expressive of an intention to make an award for impairment of earning power. Moreover, it is to be noted that defendant failed to object to the form of the verdict or move for a clarification thereof before the jury was discharged.[4]

The second ground urged for reversal is that the verdict is excessive and against the weight of the credible evidence.

Under this head defendant argues that if the $45,000.00 award to plaintiff is construed as compensation for an impairment of earning power, it is excessive and wholly without support in the record. Counsel for defendant concedes that the court correctly instructed the jury that the law permits compensation for an impairment of earning power proximately caused by defendant's negligence; that such impairment might exist despite the fact that plaintiff's earnings increased following his injury; and that the measure of damages for impairment of earning power was the difference between what plaintiff was capable of earning before the accident as compared with his ability to work and earn money after the accident. But the insistence is that there is no evidence in the record to indicate that plaintiff's capacity to earn money was impaired as a proximate result of defendant's negligence.

At this point we may note that defendant's negligence was not very seriously contested. The witness called by defendant on the issue of liability ad-

mitted he misunderstood the signal that had been agreed upon for turning on the compressed air and that, as stated in the pretrial stipulation of facts, he "turned on the air by his own mistake". The real battle was fought over the nature and extent of plaintiff's injuries and the causal relation between such injuries and the accident. Defendant lays great stress on the testimony that showed plaintiff continued to work for five years following the accident; that he received very little medical attention for the greater part of this period; that there was no substantial difference between the diagnosis made by plaintiff's treating physician and that made by defendant's examining doctor; and that the only testimony as to any disability came from doctors who began treatment of plaintiff some 4½ years after his accident.

We have read the entire record and are satisfied there was ample evidence to sustain the verdict. At the time of trial plaintiff was 36 years old and had a life expectancy of 35.9 years. Following the accident and until his employment with defendant terminated in June, 1961, plaintiff earned about $10,000.00 a year. Plaintiff testified concerning the pain, suffering and inconvenience he experienced while still working for defendant after the occurrence of the accident, and said the only reason he could continue to work was because tranquilizers kept him going. Plaintiff also related the efforts he made to secure other employment, and that at least at one plant where he sought work he was refused an application because of his condition.

The medical testimony was in sharp conflict, but this was a matter for the jury to resolve. There was testimony that plaintiff, as a result of his accident had sustained a fractured skull, and a

---

4. After the jury returned its verdict and after the court directed the Clerk to enter judgment in favor of plaintiff and against defendant for $55,000.00, defendant's counsel requested the court to poll the jury. This was done and resulted in a confirmation of the verdict by each juror.

Asked by the court at the conclusion of the poll if there was anything else he desired, counsel made no response, whereupon the jury was discharged. See Northern Pacific Railroad Co. v. Urlin, 158 U. S. 271, 15 S.Ct. 840, 39 L.Ed. 977 (1895).

head and neck injury with a partial blockage or occlusion of the left carotid artery; that this condition of partial blockage or occlusion (said to be permanent) resulted in a deficient blood supply to the left side of the brain, producing a sensation of weakness and dizziness on bending forward; that advancing years, coupled with arteriosclerosis, may aggravate this condition and bring about further occlusion, so that a sudden head movement or twisting could produce a speech defect and paralysis.[5] There was further testimony concerning permanent damage to plaintiff's hearing mechanism; permanent injury to one of the cranial nerves involving hearing and balance; traumatic neurosis; and other ill effects that could be considered to bear on impairment of plaintiff's economic horizon, including plaintiff's inability to work under conditions where he would be exposed to loud noises. There was other testimony that plaintiff was totally and permanently disabled from performing his former duties as a chief engineer on a diesel vessel of the type on which he worked prior to his accident, and also that he was from 30% to 50% disabled for general employment.

■ As is recognized by counsel for defendant, the question of excessiveness of a verdict is primarily a matter addressed to the sound discretion of the trial judge. It certainly cannot be said, on the basis of the record before us, that the court below committed an abuse of discretion in refusing to grant defendant a new trial on the ground of excessiveness. Trowbridge v. Abrasive Co., 190 F.2d 825 (3 Cir., 1951); Lebeck v. William A. Jarvis, Inc., 250 F.2d 285 (3 Cir., 1957).

The third and last point argued for reversal is that the comments and conduct of the trial judge were highly prejudicial to defendant.

■ We have, in our examination of the record, noted the several exchanges that took place between the court and counsel and between counsel. The trial was a sharply contested affair. At different times during the course of this heated proceeding, the conduct of counsel merited the admonitions directed to either or both of them by the court. No useful purpose would be served by detailing the clashes that took place. Suffice it to say we do not believe, in the light of this record, that the comments and conduct of the trial judge, viewed as a whole and in context, resulted in any prejudice to defendant. The role of a trial judge was well stated in the case of Kettenbach v. United States, 202 F. 377, 385 (9 Cir., 1913), and repeated in Russell v. Monongahela Railway Company, 262 F.2d 349, 353 (3 Cir., 1958):

"The trial judge in a federal court is not a mere presiding officer. It is his function to conduct the trial in an orderly way with a view to eliciting the truth, and to attaining justice between the parties. It is his duty to see that the issues are not obscured, that the trial is conducted in a proper manner, and that the testimony is not misunderstood by the jury, to check counsel in any effort to obtain an undue advantage or to distort the evidence, and to curtail an unnecessarily long and tedious or iterative examination or cross-examination of witnesses."

■ Finally, it should be noted that at no time during the trial did defendant's counsel take exception to any remark made by the trial judge, nor did he make any formal objection to any of the matters he now contends were so prejudicial as to justify the granting of a new trial. If in fact defendant's counsel felt aggrieved by the alleged prejudicial comments and conduct, he should

5. One of the doctors who testified for plaintiff stated that carotid artery blockage could be caused by trauma or arteriosclerosis. The doctor gave it as his opinion that in plaintiff's case the condition was caused by trauma and not arterio-sclerosis. Prognosis was serious, he said, because as people grow older they develop arteriosclerosis, and if this is added ·to plaintiff's injury, the chances of a stroke are quite strong.

have called the matter to the court's attention so as to give the court an opportunity to take corrective action.

For the reasons stated the judgment below will be affirmed.