Submit an order.

**John M. KAFFANA, Plaintiff,**

v.

**The PENNSYLVANIA RAILROAD COMPANY, a corporation, Defendant.**

Civ. A. No. 61–701.

United States District Court
W. D. Pennsylvania.
April 26, 1963.

Edward J. Balzarini, of Suto, Power, Goldstein & Walsh, Pittsburgh, Pa., for plaintiff.

Donald A. Brinkworth, Pittsburgh, Pa., for defendant.

MARSH, District Judge.

The defendant, The Pennsylvania Railroad Company, moves for a new trial for the usual reasons and because "there is no sufficient or substantial evidence tending to support the amount of the jury's verdict and the verdict is excessive and appears to have been given under the influence of passion and prejudice." This was the only reason pressed at oral argument.

The verdict was $22,500.00.

We are of the opinion that the motion should be denied.

The action was brought under the Federal Employers Liability Act, 45 U.S.C.A. § 51, et seq. The trial was concluded on February 26, 1963. The evidence disclosed that John M. Kaffana, 41 years old, was employed by the Railroad as a sandblaster; that on August 13, 1959, while he was sandblasting a railroad car and dragging a hose across the tracks, he tripped over the hose and fell on a rail injuring his right knee. The hose weighed about 200 pounds when expelling sand under air pressure, as it was at the time of the accident, and the air was full of flying sand. While performing this work, plaintiff wore a hood in which was inserted a glass shield for visibility. The principal ground of negligence relied on consisted of the failure of the defendant to furnish plaintiff with a glass shield through which he could clearly see. The shield plaintiff was using at the time of the accident was so badly pitted and fogged that his visibility was

impaired. He had previously complained to the foreman and requested a new glass, but it was not supplied. It was contended that the defective glass adversely affected plaintiff's visibility and was in whole or in part responsible for his fall and resulting injury.

Plaintiff sought to recover as items of damage for pain, suffering and inconvenience, past and future, impairment of earning power, and future medical expenses.

■ The facts stressed by the Railroad were that plaintiff lost only one day of work on account of the injury; that until he was furloughed on September 1, 1959, he continued to work as a sandblaster; that from October 14, 1959, to April 30, 1960, he worked as a mechanic's helper and welder without disability and without diminution of wages. Of course, the jury was entitled to consider his claim for impairment of earning power, notwithstanding the fact that he worked at slightly increased earnings for six months following the accident. Cf. Faudree v. Iron City Sand & Gravel Company, 315 F.2d 647 (3d Cir. 1963); Wiles v. New York, Chicago and St. Louis Railroad Co., 283 F.2d 328 (3d Cir. 1960).

On April 30, 1960, plaintiff was furloughed again and has not worked for the Railroad since.

■ The plaintiff contended that since the accident, he was unable to kneel on his right knee and could only work at occupations that did not require bending his knee and kneeling, such as a mechanic's helper and a welder; that since the furlough on April 30, 1960, he was unable to obtain steady employment because he walked with a limp and was unable to kneel and bend his knee. He testified concerning the pain, suffering, and inconvenience he experienced while working for the defendant and since.

The medical evidence on each side established that the cause of the continued disability is a painful nodule below the kneecap which can be surgically removed. Plaintiff was not advised of this curative operation until the trial or shortly before. Plaintiff's medical witness testified that the cost of the operation would be about $400.00, and that it would take about one year for a complete recovery. Plaintiff testified that he would consent to the operation.

Plaintiff's wages prior to the injury averaged about $420.00 a month [1] and afterwards, through April, 1960, about $435.00 per month.[2] Since April, 1960, except for odd jobs, his earnings have been negligible because of his inability to obtain steady employment. He related the efforts which he had made during this period to secure other employment, and the instances where he was rejected because of the condition of his knee. His medical witness testified that he could be expected to regain full earning capacity approximately one year after the operation.

From the evidence the jury could have found that plaintiff sustained a severe partial, but temporary, disability for general employment beginning on the date of the accident and probably ending in March, 1964,[3] and that the injury to plaintiff's right knee was the cause thereof. It was the jury's province to determine the loss of earning power within limits reasonably fixed by the evidence. For example, the jury could have determined that plaintiff's earning power had been diminished during the 55 months involved (from August 13, 1959 to March 13, 1964) at the rate of 75%, or $315.00 per month, and thus assess his loss of earning power in the neighborhood of $17,325.00. It could have awarded $5,175.00 for pain, suffering and inconvenience, past and future, and future medical expenses, which is not an amount that is obviously excessive. Of course, we do

---

1. Not including August and September, 1959.

2. Not including October, 1959, and vacation pay allowance in 1960.

3. We assume that a reasonable time for plaintiff to submit to the operation recommended by his doctor would be approximately one month following the trial.

not know precisely how the jury would have itemized the elements of damage, but as demonstrated, from the total award itself, it could not be found ipso facto to be the product of "passion and prejudice". Although the verdict is high, in our opinion it is supported by sufficient evidence and represents the exercise of the jury's discretion in areas where the latitude permitted that body is broad. We think that the verdict is within the monetary limits fixed by the evidence.

As stated in Armit v. Loveland, 115 F.2d 308, 314 (3d Cir. 1940), "[c]ourts in general are reluctant to disturb a jury's verdict on the ground of excessiveness where the damages are unliquidated and there is no fixed measure of mathematical certainty."

An appropriate order will be entered.