Edward **NEIDLINGER**

v.

**VICTORY CARRIERS, INC.**

Civ. A. No. 72-237.

United States District Court, E. D. Pennsylvania.

Sept. 4, 1973.

Sidney J. Smolinsky, Philadelphia, Pa., for plaintiff.

Edward C. Toole, Jr., Philadelphia, Pa., for defendant.

## OPINION

GORBEY, District Judge.

Before this court are defendant's motions for judgment notwithstanding the verdict and in the alternative, a new trial.

This is an action by a seaman, Edward Neidlinger, against the shipowner, Victory Carriers, Inc., for injuries allegedly sustained while plaintiff was employed upon defendant's vessel, the SS NORTHWESTERN VICTORY. The plaintiff claimed that he was injured on December 22, 1970. While he was mopping the messroom deck, the vessel rolled, he straightened up and struck his back on a wooden box which was attached to the wall located behind him.[1] This box, known as the "salt box", was used in the messroom to keep the salt dry. Plaintiff alleged that his injuries were the result of the unseaworthy condition of defendant's vessel and/or the negligence of defendant.

The case was tried before this court and a jury of eight in a three-day trial, commencing February 20, 1973, and ending February 22, 1973. The jury found in favor of the plaintiff and against defendant on both the issue of unseaworthiness and negligence, and awarded damages in the amount of $135,000.00.

■ First, defendant argues that there was no definitive evidence presented which would substantiate a finding that the SS NORTHWESTERN VICTORY was unseaworthy. Since the jury found that the vessel was unseaworthy, all conflicts in the testimony must be resolved in favor of the plaintiff, and the evidence and inferences evaluated in the light most favorable to him. Daniel v. Pittsburgh and Lake Erie RR Co., 389 F.2d 922 at 924 (3d Cir. 1968); Lockhart v. Hoenstine, 411 F.2d 455 (3d Cir. 1969); Janek v. Celebreeze, 336 F.2d 828, 834 (3d Cir. 1964).

■ Here plaintiff testified[2] that the "salt box" was about 12 inches high, by 14 inches long, by 14 inches wide, located about 40 inches off the floor. The distance between the wall where the box was located, and the table, was about 4 feet,[3] with a stool in between. In this limited area, plaintiff had to maneuver a mop to clean the deck of the ship, which may roll or pitch at anytime. From these facts, the jury could have found that the configuration and location of the "salt box" rendered the area not reasonably fit for its intended use and, thus, unseaworthy. See Mitchel v. Trawler Racer, Inc., 362 U.S. 539, 80 S. Ct. 926, 4 L.Ed.2d 941 (1960); Earles v. Union Barge Line Corp., 486 F.2d 1097 (3d Cir. 1973). Accordingly, the court cannot and will not upset that determination.

Defendant also claims that there was no evidence upon which the jury could conclude there was negligence. Since we have held that the jury properly concluded the vessel was unseaworthy, it is un-

1. Notes of Testimony, pp. 44–46.

2. Notes of Testimony, page 44.

3. Notes of Testimony, page 42.

necessary to discuss negligence since defendant is equally liable on either ground.

■ In addition, defendant challenges the jury's finding that the plaintiff was not guilty of contributory negligence. Defendant's main contention is that since plaintiff knew of the condition, he was negligent as a matter of law in continuing to perform his duties. This proposition cannot be accepted. *See* San Pedro Compania Armadoras S. A. v. Yannacopoulos, 357 F.2d 737, 741 (5th Cir. 1966). The record does not show any evidence that plaintiff performed his duties in a negligent manner; even if there was such evidence, it would be for the jury to consider.

Accordingly, defendant's motion for judgment notwithstanding the verdict is denied.

In support of his motion for a new trial, the defendant argues that this court erred in its instructions to the jury concerning calculation of present worth. Defendant relies heavily on the case of Russell v. City of Wildwood, 428 F.2d 1176 (3d Cir. 1970). In this case, the court reversed the trial court be-

cause there was no evidence and no instruction to the jury on how to reduce future earnings to present worth. *See also* Ballantine v. Central Railroad of New Jersey, 460 F.2d 540 (3d Cir. 1972). The only instruction that the trial court gave was that this reduction must be made. This is not the situation in the instant case.

■ At trial, the plaintiff introduced present worth tables (plaintiff's exhibit 16) to which the jury could look to reduce the future loss to present value. The use of the table was explained in plaintiff's closing argument.[4] While we agree with defendant the closing statements are not evidence, we do not agree that explanation of evidence is improper in closing arguments. Solorio v. Atchison, Topeka and Santa Fe RR Co., 224 F.2d 544 (10th Cir. 1955). In fact, that is one of the main purposes of such argument. In addition, the record indicates that defense counsel had no objection to such procedure [5] when plaintiff's exhibit 16 was offered into evidence.

■ The instruction by the court,[6] in light of the evidence presented, was suf-

---

4. "Now with respect to his future loss, whatever you find his average loss to be, however long it is, and an illustration is if it were a dollar a year for the next twelve years, and we have agreed that it must be reduced to six per cent. You must take this table using the second column. This is only an illustration. You make up your own minds. If it were a dollar a year for the next twelve years, you go over to the second column, and without multiplying it, without all those decimals, just use two or three, you multiply that out and that would give you what he is—what his loss would be as reduced over the period.

"Now most of you have been on jury duty before; but, if you don't understand what it means to reduce something to present value, let me say this to you.

"With regard to future losses, the law says that you can't give a man, if he lost ten thousand dollars or twenty thousand dollars or a million in the future, you can't give him the million today because, if you gave it to him today, he could invest it and end up with, over that period of time, more than the loss is over that period of

time. So you give him today an amount, which, over that period of time, invested at six per cent, will produce the total loss.

"Do you understand what I mean?

"In plain words, if a loss is ten dollars over ten years, you have to give him less than the ten dollars. You have to give him an amount, which, if you put in the bank today at six per cent, will produce the ten dollars over the ten years. If you gave him ten dollars today and he put it in the bank, he will end up with more than ten dollars. He will end up with ten dollars and interest.

"This table shows you how to compute that. This shows you the average years, and you multiply that by the figure in the second column, and that will tell you and you will have an approximate idea as to what the loss is. The figures that you get should be less, but you will have an idea if it's correct."

Notes of Testimony, p. 259.

5. Notes of Testimony, p. 204.

6. "If the jury should find that the plaintiff is entitled to a verdict, and further find that the evidence in the case establishes either

ficient for the jury to arrive at a proper conclusion of present worth. If defendant, at the time of trial, had any objection or request for additions to these instructions, he should have made them at that time. Accordingly, we hold there was no error in the instructions given to the jury.

■■ Finally, defendant argues that the $135,000 verdict awarded by the jury is excessive. In deciding this, we must again construe the evidence in a light favorable to the plaintiff. Daniel v. Pittsburgh and Lake Erie RR Co., *supra*. It is not the court's function to second-guess the jury, but only determine if there was sufficient evidence to support the jury's finding. Appleman v. United States, 338 F.2d 729 (7th Cir. 1964).

■ From the evidence, the jury could have found that plaintiff lost over $10,000 in past wages to trial.[7] They could also have found that plaintiff's future earning capacity was impaired by his inability to perform tile-setting. This could reasonably amount to approximately $10,000 a year;[8] and if taken to age 65, this would be $120,000. Reduced to present value, it would represent about $83,800. The fact that plaintiff did not, up to this point, do tile-setting full-time, would not limit the jury from finding on that basis, for the recovery is for impairment of earning capacity (Downie v. United States Lines Co., 359 F.2d 344 (3d Cir. 1966); *see also* Koehlor v. United States, 187 F.2d 933 (7th Cir. 1951)) and the jury had sufficient evidence to conclude that plaintiff's earning capacity was impaired to the ex-

---

a reasonable likelihood of future medical expense, or a reasonable likelihood of loss of future earnings, then it becomes the duty of the jury to ascertain the present worth in dollars of such future damage, since the award of future damages necessarily requires that payment be made now for a loss that will not actually be sustained until some future date.

"Under these circumstances, the result is that the plaintiff will in effect be reimbursed in advance of the loss, and so will have the use of the money which he would not have received until some future date, but for the verdict.

"In order to make a reasonable adjustment for the present use, interest free, of money representing a lump sum payment of anticipated future loss, the law requires that the jury discount, or reduce to its present worth, the amount of the anticipated future loss, by taking the interest rate or return which the plaintiff could reasonably be expected to receive on an investment of the lump sum payment, together with the period of time over which the future loss is reasonably certain to be sustained; and then reduce, or in effect deduct from, the total amount of anticipated future loss whatever that amount would be reasonably certain to earn or return, if invested at such rate of interest over such future period of time; and include in the verdict an amount for only the present worth, the reduced amount, of the total anticipated future loss.

"The interest rate of 6% will be used in calculating such amounts.

"It has been stipulated that the average life expectancy for a 50 year old male is 72.9 years of age.

"This fact is to be considered by the jury, in arriving at the amount of damages if any to be awarded."
Notes of Testimony, pp. 308–309.

7. It was stipulated that plaintiff was declared unfit for sea duty on March 8, 1971 (N.T., p. 7) and was declared fit for sea duty on April 30, 1971 (N.T., p. 70), a period of seven and one-half weeks. Prorating his earnings on the SS NORTH-WESTERN VICTORY from November 24, 1970 to March 9, 1971 (N.T., pp. 6 and 8) this would amount to approximately $1,500. From April 30, 1971 to September 1, 1971, plaintiff was fit for sea duty, but no such work was available (N.T., p. 76); however, he could get tile work at over $4.60 an hour, but his back condition prevented him from doing this work (N.T., pp. 77–82). His loss from tile work during this period would amount to approximately $3,250. Plaintiff was again out of work from September 24, 1971 to May 26, 1972 (N.T., pp. 8–9, and p. 83), a period of eight months. His loss from not being able to do tile work during this period would have been approximately $6,400.

8. As a tile-setter, plaintiff could earn over $4.60 an hour in 1971 for a forty-hour work week (N.T., p. 82). This could reasonably amount to $10,000 a year for future wage loss if plaintiff had chosen to do tile work full-time.

tent of $10,000 a year. The jury could have arrived at a similar conclusion on a different basis (e. g. earnings impairment for a lesser amount but for plaintiff's full life expectancy). The calculation is not a simple substraction of before and after wages. Faudree v. Iron City Sand & Gravel Co., 315 F.2d 647 (3d Cir. 1963).

This leaves a balance of approximately $41,000, which must be ascribed to pain and suffering. Where a fair recompense for injuries cannot be equated in any mathematical way, with any number of dollars, the court cannot substitute its judgment for that of the jury. Smith v. Coy, 460 F.2d 1226 (3d Cir. 1972). This case is of that nature. It cannot be said that $41,000 for pain and suffering out of a $135,000 verdict is grossly excessive in light of plaintiff's life expectancy of approximately 21 years and the nature of the injuries he sustained.

There being sufficient grounds for the jury to conclude that plaintiff was entitled to $135,000, the verdict is not excessive and defendent's motion for a new trial is denied.