**James F. SMITH**

v.

**B. P. TANKER COMPANY, LTD.**

**Civ. A. No. 72-996.**

United States District Court,
E. D. Pennsylvania.

May 12, 1975.

Joseph Lurie, Philadelphia, Pa., for plaintiff.

Victor L. Drexel, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

Plaintiff James F. Smith, a pipefitter employed by Sun Shipbuilding and Dry Dock Company, instituted this maritime action against B. P. Tanker Company, Ltd. ("B. P. Tanker"), to recover for injuries sustained while working aboard the S.S. BRITISH LIGHT, an oil tanker owned and operated by defendant B. P. Tanker. The complaint alleges that the plaintiff's injuries resulted from the negligence of the defendant and the unseaworthiness of the vessel. Following the disposition of several pretrial motions, the case proceeded to a bifurcated trial before a jury of eight. At the close of the plaintiff's case on the issue of liability, the Court granted the defendant's motion for a directed verdict pursuant to Fed.R.Civ.P. 50(a) with respect to the plaintiff's claim based on the alleged unseaworthiness of the ship. The issue of the negligence of the ship's personnel was submitted to the jury and a verdict in favor of the plaintiff was returned. After hearing testimony on damages, the jury awarded the plaintiff

**584**

$54,500 in total damages. Presently before the Court is defendant's motion for judgment notwithstanding the verdict or, in the alternative, for a new trial.

▬ Defendant B. P. Tanker has advanced three principal arguments in support of the above-described motion. Initially, the defendant contends that the plaintiff's negligence claim is barred by the doctrine of laches in that the plaintiff has failed to rebut by competent evidence the presumption of prejudice that arises from the filing of a complaint after the analogous statute of limitations has expired.[1] Second, defendant argues that under the legal principles enunciated in West v. United States, 361 U.S. 118, 80 S.Ct. 189, 4 L.Ed.2d 161 (1959), and Murphy v. National Bulk Carriers, Inc., 310 F. Supp. 1246 (E.D.Pa.1970), the shipowner in the case at bar owed no duty to the plaintiff to provide a reasonably safe place to work and, hence, cannot be held liable for injuries sustained by the plaintiff while working aboard the ship. The third argument advanced by the defendant concerns the question of the sufficiency of the evidence necessary to sustain the jury's finding of liability with respect to the negligence claim. In substance, defendant contends that the plaintiff failed to introduce sufficient evidence from which the jury could reasonably and logically infer that his injuries resulted from the negligence of the ship's employees. Upon a thorough and painstaking review of the entire record in this case, the Court is constrained to agree with the defendant's assessment of the evidence and must, therefore, grant the motion for judgment notwithstanding the verdict.[2]

### Factual Background

On January 25, 1970, the BRITISH LIGHT arrived at the shipyard of the Sun Shipbuilding and Dry Dock Company ("Sun Ship"). Prior to its arrival at Sun Ship, the vessel had been at the British Petroleum Refinery in Marcus Hook, Pennsylvania, where repairs to the vessel's main propulsion system had commenced. The bearings on the shafts leading from the high and low pressure turbines had been "wiped out," thus rendering the vessel's propulsion system totally inoperative. Extensive repairs to the ship's propulsion machinery were undertaken by Sun Ship pursuant to an oral agreement between the shipowner and the shipyard. Additional repairs were performed by Sun Ship at the request of the BRITISH LIGHT's port engineer to Sun Ship's staff supervisor. After receiving a request for work not covered by the original specification, the staff supervisor would pass on such request to the Sales Department at Sun Ship, which would then issue a work order to the appropriate department. The total cost of repairs to the vessel amounted to approximately $223,000 and required the deployment of ten separate work departments, including the machinery, pipe and rigging departments.

1. A negligence claim brought by an employee of an independent contractor against a shipowner under the general maritime law is not strictly governed by the applicable statute of limitations but is subject to the doctrine of laches. Czaplicki v. The Hoegh Silvercloud, 351 U.S. 525, 76 S.Ct. 946, 100 L.Ed. 1387 (1956); Hill v. W. Bruns & Co., 498 F.2d 565 (2nd Cir. 1974). However, in applying the doctrine of laches, admiralty courts customarily look to the analogous state statute of limitations for guidance. Giddens v. Isbrandtsen Co., 355 F.2d 125 (4th Cir. 1966); Sulkowski v. Deutsch Dampfschifahrts Gesellschaft "Handa", 283 F.Supp. 503 (E.D.Pa. 1968). In the Third Circuit, a presumption of prejudicial delay arises from the institution of suit beyond the time period provided in the analogous statute of limitations. Gruca v. United States Steel Corporation, 495 F.2d 1252, 1259 (3rd Cir. 1974). The instant action was filed approximately three months after the applicable statute had expired.

2. In light of the Court's conclusion that the verdict is not supported by the evidence and must be vacated on that basis, we need not consider defendant's contention that the negligence claim is barred by the doctrine of laches or that the defendant owed no duty to provide plaintiff with a reasonably safe place in which to work.

At the time of his injury, plaintiff was working in the ship's lower engine room. As a pipefitter, plaintiff was participating in the flushing and cleaning of the tanker's oil lubrication system, a necessary adjunct to the overhaul of the propulsion machinery. The plaintiff was attempting to tighten a joint on a section of piping when the head of a bolt he was turning with a wrench sheared off, causing the plaintiff to lose his balance. Because of the oil and grease that had accumulated on the floor of the engine room, plaintiff was unable to regain his balance and he slid into a hole in the deck created by the removal of a piece of metal deck plate, sustaining a serious injury to his leg.

Plaintiff's negligence claim against the ship was based on the presence of oil on the engine room floor and the removal of the section of deck plate. In an effort to impose liability upon the shipowner, plaintiff attempted to prove that the ship's personnel assumed the responsibility to clean up the oil engendered by the repair work but neglected to do so and also removed the section of deck plate and failed to replace it. According to the plaintiff, the combination of the slippery floor and the hole in the deck proximately caused the injuries in question here.

### Sufficiency of the Evidence

■ At the heart of the plaintiff's case is the need to prove two principal factual events. First, that the crew had the responsibility of cleaning up the oil to prevent the deck on which plaintiff was working from being dangerously slippery. There is sufficient evidence that a high official in charge of the ship did undertake the responsibility of cleaning up oil in and about the area where the plaintiff was working; therefore, the jury could, and presumably did, make the appropriate finding in favor of the plaintiff on that factual issue. The second factual issue that the plaintiff was required to prove to the satisfaction of the jury was that the hole or opening caused by the removal of the

deck plate into which the plaintiff slid, causing his leg injury, was caused by agents, servants or crew members of the ship. Defendant contends that insufficient evidence was introduced to support a factual finding that employees of the ship removed the deck plate and then negligently failed to replace the section removed. It is submitted by the defendant/shipowner that the jury was forced to speculate as to whether employees of Sun Ship or members of the ship's crew removed the piece of deck plate. While we are reluctant to overturn a jury verdict, the Court concludes upon a review of the record that the plaintiff failed to introduce sufficient evidence from which the jury could logically infer that members of the crew negligently removed the deck plate.

Plaintiff attempted to show that the plate was removed by members of the ship's crew through the testimony of Burnett S. Cureton, Superintendent of Ship Repair at Sun Ship, and two other shipyard employees. Cureton testified that he reviewed the Sun Ship work orders relating to the repairs performed on the BRITISH LIGHT and that such work orders did not reflect any work done by Sun Ship employees on a certain "Butterworth" pump located adjacent to the deck area from which the plate was removed. The two Sun Ship employees testified that they saw members of the ship's crew standing in the vicinity of the hole prior to the accident. Plaintiff submits that the absence of a work order for the "Butterworth" pump and the presence of the ship's personnel in the area of the accident permits the jury to draw the reasonable inference that employees of the ship removed and failed to replace the missing deck plate.

The Court notes initially that neither the plaintiff nor the two Sun Ship employees mentioned above were able to state that they actually saw any member of the ship's crew remove the deck plate. Plaintiff candidly testified that he did not know who removed the plate and that he did not see any of the ship's

personnel working on the "Butterworth" pump. (N.T. 1–63, 69.) The Sun Ship employees could only state that they saw members of the ship's crew "standing" in the area of the accident. (N.T. 2–75.) The two witnesses were unable to testify that they saw members of the crew working in or around the area in question. When asked by counsel for the plaintiff whether he noticed what members of the ship's crew were doing immediately before the accident, one of the Sun Ship employees (J. B. Jones) answered, "No, I don't.. I didn't take notice. They were just back there." (N.T. 2–50.)

■ With respect to the issue of who removed the piece of deck plate—whether members of the crew or Sun Ship employees—the fact that members of the ship's crew were merely *present* in the lower engine room prior to the accident is of little evidentiary value alone on a determination of the issue as to who removed the plate. The evidence showed that at one point or another there was in excess of ten different work departments and as many as 75 employees of Sun Ship actively engaged in the repair and overhaul of the vessel's propulsion system. Sun Ship employees worked 24 hours a day for approximately one month and were working in the lower engine room at the time of the plaintiff's accident. In light of the presence of Sun Ship workers in the lower engine room, the jury was forced to speculate as to who actually removed the section of deck plate. The mere possibility that the plate had been removed by members of the ship's crew cannot properly support a verdict of liability against the ship, particularly in view of the relatively strong possibility that the plate had been removed by Sun Ship employees in connection with the repairs performed on the vessel's main propulsion system.

Nor does the lack of a work order for the "Butterworth" pump, coupled with the presence of crew members in and about the lower engine room, constitute sufficient evidence from which the jury could reasonably infer that the section of deck plate was removed by members of the crew. The pump was not mechanically or physically connected with the deck plate. The aperture in the floor caused by the removal of the plate was simply in the near vicinity of the pump. That the crew of the ship removed and failed to replace the deck plate cannot validly be deduced from the fact that Sun Ship work orders did not reflect repairs to the "Butterworth" pump. The fact that Sun Ship personnel did not work on the pump has no evidentiary significance with respect to the question of who removed the deck plate.

■ The law is well settled that in ruling upon a motion for judgment notwithstanding the verdict the trial court, without considering the credibility of the witnesses, must view the evidence and all reasonable inferences therefrom in the light most favorable to the verdict winner. Thomas v. E. J. Korvette, Inc., 476 F.2d 471 (3rd Cir. 1973); Meyer v. Bankers Dispatch Corporation, 471 F.2d 1290 (8th Cir. 1973). Nevertheless, if upon review of the record the verdict is not supported by legally sufficient evidence, the moving party is entitled to judgment notwithstanding the verdict. Urti v. Transport Commercial Corporation, 479 F.2d 766, 768 (5th Cir. 1973); Neidlinger v. Victory Carriers, Inc., 365 F.Supp. 1376 (E.D.Pa. 1973). Legally sufficient evidence has been defined as substantial evidence, that is, "evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." Boeing Company v. Shipman, 411 F.2d 365, 374 (5th Cir. 1969). While liability may be established by circumstantial evidence and inferences reasonably deducible therefrom, there must be sufficient facts in evidence from which the jury could reasonably and logically reach the conclusion sought by the plaintiff. In the instant case, plaintiff introduced no direct evidence

regarding the removal of the section of deck plate; nor could the jury reasonably and logically infer from the evidence that members of the ship's crew removed and failed to replace the missing plate. In that a verdict based on mere speculation or conjecture cannot stand, defendant's motion for judgment notwithstanding the verdict will be granted. See, Radiation Dynamics, Inc. v. Goldmuntz, 464 F.2d 876 (2nd Cir. 1972); Smith v. Bell Telephone Co. of Pa., 397 Pa. 134, 153 A.2d 477 (1959).